Mary E. LITTLE, et al.,
Plaintiffs-Appellees,

v.

The VALLEY NATIONAL BANK OF
ARIZONA, a national banking asso-
ciation, Defendant-Appellant.

No. 79–3122.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1980.

Decided July 10, 1981.

Richard A. Segal, Gust, Rosenfeld, Divelbess & Henderson, Phoenix, Ariz., for defendant-appellant.

John F. Wells, Stark, Stewart, Wells & Robinson, Oakland, Cal., argued, for plaintiffs-appellees; John F. Banker, Banker & Linderman, Tiburon, Cal., on brief.

Before WRIGHT and FLETCHER, Circuit Judges, and PECKHAM, District Judge.[*]

FLETCHER, Circuit Judge:

This is a class action[1] brought by some five hundred investors who purchased debentures of the United States National Bank (USNB) from First California Company (FCC), a brokerage house. Both USNB and FCC are now defunct. The plaintiffs brought suit against C. Arnholt Smith, president of USNB; Michael Coen, president of FCC; FCC; and Valley National Bank of Phoenix (VNB). The liability of all four defendants was predicated on violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1976); section 17 of the Securities Act of 1933, 15 U.S.C. § 77q; regulations of the Comptroller of the Currency, 12 C.F.R. §§ 16.1–16.6 (1976); and the Arizona blue sky laws, Ariz.Rev. Stat.Ann. §§ 44–1991, –2003.

The suit against C. Arnholt Smith was severed. The court granted judgment against FCC and Coen on stipulated facts. The suit against VNB went to trial, and the plaintiff class secured a jury verdict in the amount of $4 million. VNB appealed, challenging the sufficiency of the evidence to support the jury's verdict. None of the other defendants is involved in this appeal.

The plaintiffs claim that they were induced to buy worthless debentures, by representations that failed to disclose certain material information. The debentures were purchased through brokers employed by FCC, who in turn obtained the debentures from VNB. The plaintiffs claim that VNB "laundered" the securities by cooperating with USNB and FCC to conceal from potential investors the facts relating to their ownership and the circumstances under which they were issued. Alternatively, the plaintiffs claim that VNB aided and abetted the fraud on investors perpetrated by FCC.

VNB argues that the fraud was perpetrated by USNB and FCC, and that it was nothing more than a bystander or conduit. VNB argues that some of the allegedly material facts were unknown to it, and that it had no duty to disclose the facts which it did know. It also argues that plaintiffs have failed to prove the scienter necessary to hold it liable for the alleged violations.

We note at the outset that VNB challenges none of the trial court's rulings on legal issues, and does not challenge the jury instructions given by the court. We there-

---

[*] The Honorable Robert F. Peckham, Chief Judge, United States District Court for the Northern District of California, sitting by designation.

1. This case was the subject of a prior appeal on the class certification issue. *Little v. First California Co.*, 532 F.2d 1302 (9th Cir. 1976).

fore consider only whether the evidence was sufficient to satisfy the standard articulated by the court in its instructions.

The trial court ruled that the proof required to show violations of Rule 10b–5, section 17 of the Securities Act of 1933, and the Arizona blue sky laws (counts I, II, and IV) was identical as a matter of law. Accordingly, the court gave one set of instructions on those three counts. Separate instructions were given on count III, which alleged violations of the regulations of the Comptroller of the Currency. The jury found for the plaintiffs on all four counts. Damages were determined to be the face value of the worthless securities. Evidence sufficient to support any one of the counts would establish VNB's liability, and would therefore justify the damages found by the jury.

■ This court will not disturb a jury's verdict "unless we find that the evidence was insufficient as a matter of law to support [the] verdict—that the evidence was such that no reasonable man would accept it as adequate to establish the existence of each fact essential to the liability." *Kunz v. Utah Power & Light Co.*, 526 F.2d 500, 504 (9th Cir. 1975).

I

COUNT III

Count III alleges the violation of certain regulations of the Comptroller of the Currency, 12 C.F.R. §§ 16.1–16.6 (1976). These regulations prohibit the public offering of bank securities without an offering circular filed with and approved by the Comptroller. 12 C.F.R. § 16.2(a). The regulations closely parallel the requirements of the Securities Act of 1933, which themselves do not apply to bank securities.[2]

It is undisputed that FCC and Coen knowingly distributed unregistered bank securities to the public without the required offering circular. The court instructed the jury that VNB would be liable as an aider and abettor of the violation if it knew that FCC was marketing unregistered securities to the public, and if it rendered substantial assistance to FCC and Coen in marketing the securities. The court also instructed the jury that wanton and reckless disregard for facts that would indicate that FCC was marketing the securities illegally would suffice to show knowledge.[3]

From the evidence introduced at trial, the jury could have found as follows. In December 1972, C. Arnholt Smith purchased $6 million of USNB subordinated capital notes (debentures) from USNB. He was president of USNB at the time. The purchase was financed by a loan from VNB, with which C. Arnholt Smith and USNB had a long-standing business relationship. The notes were pledged to VNB as collateral for the loan. The loan was arranged very rapidly at the end of the year so that the $6 million would appear on USNB's books for 1972 as an increase in capital. VNB apparently understood that the notes had been or would be placed with institutional investors very soon, and that the proceeds of the sale would be used to pay off the loan within thirty days.

The notes had not been placed nor the loan repaid by the end of January 1973. The loan was renewed for sixty days to give C. Arnholt Smith more time to arrange the sale of the notes. In January, Smith wrote a letter to VNB stating that he had contacted Halsey, Stuart & Co., a Chicago brokerage firm, regarding placement of the notes with institutional investors. A VNB credit review, prepared by VNB's staff, stated

2. The trial court held that the regulations give rise to a private right of action. Because that ruling is not challenged here, we express no view as to its correctness. *Compare* 12 C.F.R. § 16.2(a) (1976) *with* 15 U.S.C. §§ 78*l* (*l*), 77e, 77*l* (expressly conferring private right of action).

3. The status of aiding and abetting as a basis for liability under the securities laws is in some doubt. *See generally* Ruder, *Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification, and Contribution*, 120 U.Pa.L. Rev. 597, 620–46 (1972). We do not reach this question, since defendants do not attack the jury instructions.

that the extension was needed because Halsey, Stuart "still [had to] go through registration and prepare a prospectus." The Halsey, Stuart underwriting was not consummated because USNB and C. Arnholt Smith wished to avoid the examination required for the preparation of a prospectus or offering circular. There was evidence from which the jury could have inferred that VNB either knew or should have suspected that this was the reason for the agreement being rescinded.

Around April 5, 1973, C. Arnholt Smith informed VNB that he would attempt to sell the notes through First California Company instead. As a result, VNB allowed the loan to go into default. FCC was an entity known to VNB; VNB had loaned FCC $1.5 million in 1972, and had collected enough information in connection with the loan to be familiar with FCC's business. VNB knew that FCC was a large brokerage firm engaged primarily in selling to the public. Also, in September, 1972, the SEC had served VNB with a subpoena in the course of an investigation of FCC and FCC's president, Michael Coen.

Later in April, C. Arnholt Smith requested VNB to return the notes to USNB for reissuance in smaller denominations, so that they might be more easily sold by FCC. The original issue had been twelve $500,000 notes in the name of C. Arnholt Smith; VNB returned these to USNB and received in exchange four $500,000 notes and forty $100,000 notes, all in FCC's street name, EFCEE & Co.

FCC solicited orders from its customers for the USNB notes. As sales were confirmed, the notes were transferred by VNB to FCC via Bank of America in California. The first transfer consisted of $3 million in notes, the second, $1 million in notes. The remaining $2 million are still in VNB's possession.

Although there was conflicting evidence, and the jury was required to draw some inferences, the jury could reasonably have concluded that VNB knew that a public offering of the debentures was planned by FCC. It could also have concluded that

VNB knew that no offering circular had been prepared, although one was required. It is undisputed that VNB never saw an offering circular relating to the USNB notes, because one was never prepared. Plaintiffs' expert, Dr. Sherman Maisel, testified that a bank in VNB's position, holding $6 million in notes as collateral from a bank for which it had no recent financial statement, would be very anxious to see any offering circular that was prepared and ordinarily would have received a copy. VNB's witnesses testified that they had no desire to see an offering circular, did not request one, and were not concerned that they never saw one. Dr. Maisel also testified that the breakdown of the notes and the fact that they were put in street name should have alerted the bank that a public offering was planned. VNB's witnesses countered that these events had no significance for them.

VNB's two principal witnesses were Dean Smith, chief loan officer, and Carole Branom, his assistant. Dean Smith professed ignorance of securities, securities law, and the mechanics of securities sales. He testified that the technical language in the credit reviews issued over his name, e.g., "registration and prospectus," was written by his assistant, Carole Branom, a woman with no background or education in the securities field. Branom stated in her deposition that Dean Smith never told her that registration and a prospectus were contemplated; she made up the language for purposes of the credit review.

The jury would be justified in disbelieving this testimony. Furthermore, both Dean Smith's and Branom's credibility was impeached at trial. Dean Smith admitted to borrowing substantial sums of money, approximately $20,000 per year, from C. Arnholt Smith. These loans were repaid only when Dean Smith procured larger loans from C. Arnholt Smith, i. e., the loans were "rolled over." The loans were made while Dean Smith was the officer in charge of C. Arnholt Smith's and USNB's credit at VNB. Dean Smith's debt to C. Arnholt Smith created a clear conflict of interest.

Dean Smith concealed the facts of the loans from VNB until the C. Arnholt Smith empire collapsed, and when the loans were revealed, he resigned his post at VNB.

Branom did not testify at trial. She was deposed considerably in advance of trial, while she was still employed at VNB. VNB listed her as a witness in the pretrial order, and notified plaintiffs only on the eve of trial that she would not appear. By that time, she had moved out of state and could not be subpoenaed. The court commented to the jury that it was entitled to draw inferences adverse to VNB from her nonappearance.

The jury could also have found that VNB cooperated with USNB to make it appear to FCC brokers that the notes were owned by VNB and were being sold by it. If VNB had owned the notes, the planned public offering would have been secondary and would not have required an offering circular. The effect of VNB's nondisclosure was to conceal from FCC's brokers the fact that an offering circular was required. FCC communicated not with the loan department of VNB, which was holding the notes as collateral, but with the investment department, where the notes would be held if they belonged to the bank. FCC personnel testified that they thought VNB owned the notes. Dean Smith's and Carole Branom's testimony revealed that VNB was aware of the misconception and failed or refused to correct it.

■ The foregoing evidence is sufficient to support the jury's verdict on count III. The jury could reasonably conclude that VNB either knew or acted with wanton and reckless disregard for the fact that FCC was offering the notes to the public illegally, and that VNB rendered substantial assistance to FCC in the illegal offering.

## II

### THE FRAUD COUNTS

■ The trial court sent counts I, II, and IV (the fraud counts) to the jury on two alternate theories. The court first instructed the jury that VNB could be held liable for the fraudulent sale of the notes if it intentionally participated in the sale and distribution of the notes to the public, knowing that certain material facts pertaining to the notes were not disclosed to the public. See *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 150–54, 92 S.Ct. 1456, 1470–72, 31 L.Ed.2d 741 (1972). Facts are considered material if there is a substantial likelihood that an ordinary investor would have considered them important in deciding whether or not to purchase the securities. See *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1266 (9th Cir. 1979). The court also instructed the jury that the requirement of intent could be met by showing either actual knowledge of the fraud, or wanton and reckless disregard of the facts.[4]

The plaintiffs' alternate theory was that VNB aided and abetted FCC in the perpetration of the fraud. The court instructed the jury that it could find VNB liable for aiding and abetting if VNB acted with knowledge or wanton and reckless disregard for the facts indicating fraud, and provided substantial assistance in commis-

---

4. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 825 (1976), established that a violation of Rule 10b–5 requires scienter. In a footnote, the Court acknowledged that recklessness might be sufficient to establish scienter under the Rule, but the question was not presented in that case. *Id.* at 195 n.12, 96 S.Ct. at 1381 n. 12. *White v. Abrams*, 495 F.2d 724 (9th Cir. 1974), decided before *Ernst & Ernst*, held that Rule 10b–5 imposed a "flexible duty" the requirements of which depend on the role played by the defendant in the alleged violation. In *Arthur Young & Co. v. United States District Court*, 549 F.2d 686, 695–96 (9th Cir. 1977), this court observed in dictum that little was left of the flexible duty standard after *Ernst & Ernst*. Oddly enough, this court then *applied* the *White v. Abrams* standard in *Zweig v. Hearst Corp.*, 594 F.2d 1261 (9th Cir. 1979), without any reference to *Arthur Young*. See also *Spectrum Financial Companies v. Marconsult, Inc.*, 608 F.2d 377, 382–85 (9th Cir. 1979) (Ferguson, J., concurring specially). Since defendants have not attacked the jury instructions, we need not consider whether recklessness is sufficient for liability under Rule 10b–5 and related statutes. See generally Bucklo, *The Supreme Court Attempts to Define Scienter Under Rule 10b–5: Ernst & Ernst v. Hochfelder*, 29 Stan.L.Rev. 213 (1977).

sion of the fraud. *See* Ruder, *supra* note 3, at 620–46.

 The facts which support liability on count III, discussed above, support liability on the fraud counts as well. In addition, the jury could have concluded that VNB had actual knowledge of certain other material undisclosed facts.

The most critical fact of which VNB undisputably had knowledge was the ownership of the notes. At USNB's request, VNB had sent the notes back to USNB to be reissued in smaller denominations and in FCC's street name. This effectively concealed the identity of the owner of the notes from FCC salesmen and prospective buyers. Because the owner was C. Arnholt Smith, an insider selling his own notes, the fact of ownership was significant. The removal of Smith's name from the notes also concealed the fact that the notes were a primary issue and required an offering circular. FCC personnel testified that they were certain the notes were a secondary offering.

VNB also knew the history of the notes' issuance. The notes were created by a year-end loan to Smith so that USNB's annual statement would show an increase in capital. The notes were intended for institutional placement. Finally, the notes themselves were collateral for the loan, and their prospective sale, not other income or assets of the borrower, was to be the source of repayment. There was expert testimony that the reliance on such collateral to support a loan was not good banking practice. In addition, VNB, through its loan officer Dean Smith, knew that its credit policies toward USNB might have been influenced by Dean Smith's personal borrowings from C. Arnholt Smith.

Because of USNB's perilous financial and legal position, no legitimate public sale of the notes would have been possible. The jury could infer that VNB's participation in the sale was essential, and that its role in the sale was fraudulent. Finally, the long-standing close relationship between VNB, its officers, and C. Arnholt Smith could have made VNB's disclaimers of knowledge seem implausible.

We conclude that there was ample evidence from which the jury could have found that VNB knew material facts which it failed to reveal. The jury could also have found that VNB's nondisclosure of the material facts was knowing, or was wanton and reckless. Alternatively, the jury could have found that VNB knowingly rendered substantial assistance to FCC's fraud. Because we conclude that there was sufficient evidence to support the jury's verdict against VNB on all four counts of the complaint, we must affirm the judgment of the district court.

VNB's violation of the Securities Act, the Comptroller's regulations, and the Arizona blue sky laws is almost eight years old and the district court's judgment of four million dollars is two years old. The class members are entitled to their damages and VNB should not be allowed to benefit from any further delay. We accordingly order that the district court's judgment of four million dollars plus interest be affirmed and that the mandate ordering payment of the judgment issue at once.

AFFIRMED.