The **GLOVATORIUM, INC.,**
Plaintiff-Appellee,

v.

**NCR CORPORATION,**
Defendant-Appellant.

No. 81–4453.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1982.

Decided Aug. 20, 1982.

---

William B. Irvin, McLaughlin & Irvin, San Francisco, Cal., for defendant-appellant.

Richard L. Perez, Oakland, Cal., for plaintiff-appellee.

Before KENNEDY, SCHROEDER and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Glovatorium filed this action against NCR Corporation (NCR) in state court alleging breach of contract, intentional and negligent misrepresentation, breach of warranty, and fraud for conversion of equipment. NCR removed the action to the federal district court on the basis of diversity of citizenship. After a jury trial, Glovatorium was awarded compensatory damages

for intentional misrepresentation, breach of warranty, and breach of the implied covenant of good faith. Punitive damages were also awarded.

NCR appeals from the judgment of the district court.

## I. SUFFICIENCY OF THE EVIDENCE OF FRAUD BY NCR

■■■ NCR contends that the evidence adduced at trial did not establish that it acted fraudulently in the sale of the SPIRIT/8200 computer system to Glovatorium. Under California law, fraud is established when a misrepresentation is knowingly made with the intent to induce reliance, and justifiable reliance results, causing plaintiff damage. *Crocker-Citizens National Bank v. Control Metals Corp.*, 566 F.2d 631, 636–37 (9th Cir. 1978); *Fidelity Savings and Loan Association v. Aetna Life & Casualty Corp.*, 440 F.Supp. 862, 866 (N.D.Cal.1977), aff'd 647 F.2d 933 (9th Cir. 1981). Review of whether there is sufficient evidence to support the finding of fraud is, however, a procedural matter in which we must apply federal law. *Neely v. St. Paul Fire & Marine Insurance Co.*, 584 F.2d 341, 345 (9th Cir. 1978). This court will not disturb a jury verdict unless the evidence is such "that no reasonable man would accept it as adequate to establish the existence of each fact essential to the liability." *Kunz v. Utah Power & Light Co.*, 526 F.2d 500, 504 (9th Cir. 1975); *see also Little v. Valley National Bank of Arizona*, 650 F.2d 218, 220 (9th Cir. 1981).[1] It is the function of the jury, not of this court, to weigh conflicting evidence and judge the credibility of witnesses. *Standard Oil Co. v. Perkins*, 347 F.2d 379, 383 (9th Cir. 1965).

### A.

■■ Glovatorium sought to show fraud by NCR in that NCR sold the SPIRIT sys-

tem with knowledge of its defects. Review of the record indicates that the evidence supports the claim that NCR had knowledge of the defects. First, Norman Cohen, a former district manager for NCR, testified that he notified the SPIRIT support group in Dayton, Ohio of problems with the system. RT: 624–25. He also stated that he advised "headquarters" about these problems. RT: 628. Second, NCR's own witness, Peter Ford, who was associated with the SPIRIT support group, RT: 1256, stated that as project leader for the SPIRIT development team, he "was responsible for the time and delivery of the system and *reporting progress to management at NCR.*" RT: 1254 (emphasis added). It can reasonably be inferred that as project leader he knew of the problems and that as part of his report to NCR management about the progress of the system, he advised them of the problems with the system. Third, there was evidence that NCR "corporate" attempted to cover up defects in the system. RT: 636–37. For instance, one of the problems experienced with the system was that it was so slow that many clients found they could accomplish the same task faster if it were done manually rather than using the SPIRIT system. RT: 628. NCR, however, developed and distributed a demonstrator model for the system to be used as a sales tool that "was specifically designed to function very, very effectively, and very fast, much more so than the actual SPIRIT programs did." RT: 636–37. Thus, it is reasonable to infer knowledge of this defect on the part of NCR since the demonstrator was specifically designed to cover it up.

### B.

Fraud on the part of NCR was also claimed with regard to the sales representations made to Glovatorium concerning the route accounting system.[2]

---

**1.** It should be noted that NCR did not make a motion for a directed verdict at the close of evidence. The Fifth Circuit has said that on appeal, inquiry where no such motion is made is very narrowly restricted to whether there is any evidence to support the jury's verdict, irrespective of its sufficiency. *Scheib v. Williams-*

*McWilliams Co.*, 628 F.2d 509, 512 (5th Cir. 1980).

**2.** For convenience the route accounting, accounts receivable and payable, payroll and automatic general ledger systems are referred

Under California law, fraud is properly inferred from the immediate failure to perform a promise. *Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d 1362, 1368 (9th Cir. 1981). In the matter before us, it was represented to Glovatorium that the computer would perform route accounting functions and that it would be delivered with the system by September, 1975. *See, e.g.,* RT: 710–11. The computer was delivered in September, 1975, but could not be used for any route accounting functions. *See* RT: 713. The payroll function was not operating until late 1975 or early 1976, RT: 781, and once in operation, it never ran properly. RT: 545. The route accounting system (without the other systems) was not available until March, 1976. RT: 781. Only one of Glovatorium's five routes was ever put on the computer because of problems with the system. RT: 719–20. The accounts payable and general ledger systems were *never* installed because of problems. RT: 497–509. Under *Kaylor*, the immediate failure to perform in terms of the installation and the operation of the computer systems for which Glovatorium contracted is evidence from which fraud on the part of NCR is properly inferred.

Further evidence of fraud is shown by Warman's testimony that the 8200/SPIRIT system was never designed to perform a route accounting function. *See* RT: 1113–14; *see also* RT: 153. Yet, Glovatorium was sold the 8200/SPIRIT system to perform a route accounting function. Moreover, NCR had also determined that the SPIRIT system should not be modified. RT: 1060–61. Yet, Glovatorium was sold a modified version of SPIRIT. RT: 206–08.[3]

### C.

NCR contends that even if the above evidence shows fraud on the part of NCR

to as the route accounting system unless otherwise indicated.

**3.** NCR Corporate headquarters rejected the original contracts signed by Glovatorium which indicated a modification of SPIRIT. RT: 206–07. Thomas Warman, the NCR salesman, then prepared the contracts in such a way that the proposed modification was not apparent on the face of the contracts and they were approved. RT: 1010. Information concerning the antici-

employees, there is no evidence to establish fraud by NCR.

California law provides for corporate liability where "the advance knowledge, ratification, or act of oppression, fraud, or malice [is] . . . on the part of an officer, director, or managing agent of the corporation." Cal.Civil Code § 3294(b). The key inquiry in the determination of whether an employee is a managing agent is "the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy." *Egan v. Mutual of Omaha Insurance Co.*, 24 Cal.3d 809, 822–23, 620 P.2d 141, 148, 169 Cal.Rptr. 691, 698 (1979), *cert. denied & appeal denied*, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980); *see also* California Jury Instructions, BAJI, 14.74 (1981).

Warman testified that his conduct in connection with the Glovatorium sales transaction was, to his knowledge, "consistent . . . with NCR's *general policies and practices.*" RT: 995 (emphasis added). Indeed, the record demonstrates fraudulent acts by several NCR employees. First, Warman made the sale to Glovatorium of the computer system with the knowledge that it was not designed to perform the functions for which it was sold. *See* RT: 1113–14. Second, the Oakland office manager for NCR and his assistant told one of their employees to switch the serial numbers on the drive from a loaner with the serial numbers on the Glovatorium drive. *See* RT: 171, 285–86. Glovatorium, however, had been told that the loaner was temporary. RT: 185, 284.

There is also, as discussed above, evidence of fraudulent sales practices regarding the SPIRIT system at the direction of NCR

pated volume of transactions, referred to as a configurator, was also sent with both sets of contracts. The configurator sent the first time was accurate. RT: 213–14. The configurator sent with the second set of contracts, however, was one in which the volume of transactions had been falsely reduced so that it had no relationship to the Glovatorium installation. RT: 216, 235–36.

headquarters. NCR seeks to distinguish such alleged fraud from the sales representations made to Glovatorium. The evidence of directions from headquarters is, however, probative of intent and, therefore establishes lack of good faith on the part of NCR and its sales personnel in the representations made concerning the route accounting systems. *See United States v. Walls,* 577 F.2d 690, 696 (9th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978). Even in criminal cases, probative evidence of willingness to participate in similar crimes is admissible. *United States v. Longoria,* 624 F.2d 66, 69 (9th Cir.), *cert. denied,* 449 U.S. 858, 101 S.Ct. 158, 66 L.Ed.2d 73 (1980); *United States v. Moreno-Nunez,* 595 F.2d 1186, 1188 (9th Cir. 1979).

The above evidence and the inferences that can reasonably be drawn from it are adequate to support the jury's conclusion that someone at NCR who was an officer or a director or who qualified as a managing agent participated in or ratified the fraudulent sale representations made to Glovatorium. This is particularly true in light of the fact that NCR offered no evidence to rebut such an inference. A reasonable person might accept the above evidence as adequate to establish NCR's liability; we will not disturb the jury verdict. *See Little,* 650 F.2d at 220.[4]

## II. REQUESTED JURY INSTRUCTION DEFINING MANAGING AGENT

Appellant claims prejudicial error in the refusal of the trial court to give its requested instruction which would have defined the term "managing agent."

█ NCR requested that the judge instruct the jury that corporate liability existed, inter alia, if a managing agent "having power to bind the corporation" was involved in the fraud. No error existed in the trial judge's refusal to give the proffered instruction because the definition of a managing agent is not restricted to those who

have power to bind the corporation. As discussed above, the California Supreme Court has held that focus in determining whether one is a managing agent is the degree of discretion the employee has to make decisions that will ultimately determine corporate policy. *Egan,* 24 Cal.3d at 822–23, 620 P.2d at 148, 169 Cal.Rptr. at 698; *see also* California Jury Instructions, BAJI 14.74 (1981). NCR's reliance on *Toole v. Richardson-Merrell, Inc.,* 251 Cal.App.2d 689, 711, 60 Cal.Rptr. 398, 414 (1967), as support for its requested instruction is misplaced. The court in *Toole* did not define a managing agent as one having power to bind the corporation; it referred only to "corporate officials having power to bind the corporation." *Id.* Moreover, even if the *Toole* court meant to define a managing agent as such, the more recent decision of the California Supreme Court in *Egan* is controlling.

The trial court's instruction on this point gave adequate guidance to the jury. The court, in effect, required that a person in the corporate hierarchy other than the salesman must have approved or aided the fraud, before punitive damages could be awarded. The relevant language given was: "you would have to find that an officer, director, or managing agent other than Mr. Warman, either over ratified or approved or confirmed these acts of fraud, oppression or the character of those acts, or that such a person personally participated in the acts of fraud, oppression or malice." No better or more complete instruction was proffered by NCR and, on the facts of this case, none was needed.

It is also clear from NCR's closing argument that it did not base its theory of defense on the grounds that any fraudulent acts that occurred were committed by employees who were not of the level of managing agents and that no one in authority at NCR knew about or ratified such acts. In speaking to the jury about intentional fraud, NCR stated that the issue "gets

---

4. Because we find that the record supports the finding of intentional misrepresentation on the part of NCR, we need not reach the breach of

warranty issue claimed by NCR. *See* Opening Brief for Appellant at 46.

down to Mr. Warman, and it gets down to NCR." RT: 1520. NCR then discusses Warman's credibility, RT: 1521, and the fact that he had no incentive to make intentional misrepresentations. RT: 1523–25. With regard to NCR itself, Appellant claims that NCR acted in good faith and that "there was nothing nefarious, or underhanded, or fraudulent about the whole transaction." RT: 1533. NCR did not argue that if any fraud took place, there was insufficient evidence upon which to hold NCR liable under Cal.Civil Code § 3294. It is difficult to find prejudice due to an error based upon a theory that NCR did not argue to the jury.

Based on the foregoing, we conclude that any error committed by the trial judge was not prejudicial.

### III. THE PUNITIVE DAMAGE AWARD

■■■■ NCR argues that the punitive damages awarded to Glovatorium by the jury were excessive and must be reversed.[5] An award of punitive damages that is approved by the district court will not be disturbed by the appellate court "unless it appears that the jury was influenced by passion or prejudice." *Moore v. Greene*, 431 F.2d 584, 593–94 (9th Cir. 1970). NCR contends that the award is unjustifiable punishment because it was based "upon a fraud judgment absent any malice, reprehensible or outrageous conduct, or evidence of wilful disregard of plaintiff's interest." They also point to the fact that the punitive damage award exceeded the compensatory damage award by 9.1 times. These claims fail to

demonstrate that the jury was influenced by passion or prejudice.

■■■ As discussed in section I, *supra*, there is adequate evidence in the record to support the jury's finding of fraud on the part of NCR. There is no requirement under Cal.Civil Code § 3294 that malice, reprehensible or outrageous conduct or wilful disregard be shown in addition to the fraud. *Horn v. Guaranty Chevrolet Motors*, 270 Cal.App.2d 477, 484, 75 Cal.Rptr. 871, 875–76 (1969). Thus, only the fact that the punitive damages were 9.1 times the compensatory damages remains. Without anything more, this is not an adequate basis for this court to find that the jury was impassioned or prejudiced.[6]

### IV. THE COMPENSATORY DAMAGE AWARD

NCR claims that the jury awarded over $32,000 in damages that were not proved at trial and that damages were improperly awarded for Glovatorium's lost profits.

We must determine whether the verdict is grossly excessive or monstrous absent a total lack of evidence on all or certain portions of the case and absent prejudice. *Barzelis v. Kulikowski*, 418 F.2d 869, 870 (9th Cir. 1969).

### A.

■■■ NCR focuses its argument that excessive damages were awarded on the fact that, during closing argument, Glovatorium

---

5. NCR also questions whether Cal.Civil Code § 3294, the statute providing for the award of punitive damages in the matter before us, is unconstitutional. We disagree. First, NCR claims it is "void for vagueness." Opening Brief for Appellant at 37. This court, however, expressly upheld section 3294 as constitutional when the same challenge was made in *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 480 (9th Cir. 1977): "[A]ny uncertainty as to the amount of permissible punitive damages in any specific case does not invalidate the statute." Second, NCR claims that the statute results in an unlawful delegation of legislative authority. Opening Brief for Appellant at 38. NCR fails

to cite any California case authority to support its contention. Analyzing the separation of power doctrine as it applies to the federal government is, of course, inapposite.

6. The trial judge expressly reached this conclusion on the basis of his own observation of the jury: "[M]y own observations of this jury lead me to be satisfied that this jury was not swayed by passion or prejudice, but went about its task in a fair and objective manner. There was nothing in the course of this trial that would suggest any basis for them to have—or that might have generated any kind of passion or prejudice."

requested $253,000 in damages,[7] *see, e.g.,* Reply Brief for Appellant at 18, while the jury awarded over $32,000 more. This fact, however, is not an adequate basis upon which to disturb the jury verdict. The jury was entitled to disregard the amount asked for when there was other evidence from which the jurors could draw their own conclusions. *Luria Brothers & Co. v. Pielet Brothers Scrap Iron & Metal, Inc.,* 600 F.2d 103, 115 (9th Cir. 1979). In the case before us, there was such evidence. For instance, the president of Glovatorium testified that lost profits could have been as high as $150,000. *See* RT: 565. To be conservative, however, he asked only for $24,000 in lost profits. *Id.* This evidence alone is enough to support the amount awarded by the jury.[8]

### B.

█ NCR contends that damages were improperly awarded on the basis of Glovatorium's lost profits. NCR, however, failed to raise any objection at trial to the instruction by the court that lost profits constituted a proper element of damages. NCR thereby waived its objection. *See Telco Leasing, Inc. v. Transwestern Title Co.,* 630 F.2d 691, 693 (9th Cir. 1980); *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1333–34 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977).

### CONCLUSION

Based on the foregoing, the judgment entered by the district court is AFFIRMED.

---

7. NCR also seeks to point out that Glovatorium, through the testimony of its president Robert Depper, testified that approximately the same amount, $253,000, was requested as damages. *See* Opening Brief for Appellant at 41 n.13. The record, however, indicates that the figure was a low and conservative estimate by Depper of Glovatorium's damages. *See* RT: 758.

8. NCR also claims that Glovatorium could have calculated the damages with more precision and that the calculations were "grounded in

inaccuracies and speculation." Opening Brief for Appellant at 45. It is, however, the function of the jury to evaluate the evidence on the issue of damages. *United States v. Harue Hayashi,* 282 F.2d 599, 602 (9th Cir. 1960). This court must only determine whether the evidence supports the award. *See id.* As discussed in the text, in our view it does. Indeed, other than the $32,000 no claim is made by NCR that there is insufficient evidence to support the award.