**UNITED STATES of America, Appellee,**

v.

**Randy Charles SCHMIDT, Appellant.**

**No. 90–5247MN.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1990.

Decided Jan. 10, 1991.

Ronald Meshbesher, Minneapolis, Minn., for appellant.

Margaret Burns, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and BATTEY,* District Judge.

PER CURIAM.

Randy Schmidt appeals his conviction for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1981), and conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. Schmidt argues that the district court [1] erred because there was insufficient evidence to support either conviction and because the jury instruc-

---

\* THE HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota.

tions were flawed. Furthermore, Schmidt argues that because he received ineffective assistance of counsel, we should reverse his convictions and grant him a new trial. We dismiss without prejudice Schmidt's ineffective assistance of counsel claim since it is more properly raised in a habeas proceeding. Because there was sufficient evidence to support the convictions and because the jury instructions did not contain any plain errors, we affirm.

## I.

Schmidt was the last link in a cocaine distribution chain that started in Tucson, Arizona and ended in Mankato, Minnesota. Charles Babich, the Arizona supplier, sold cocaine in kilogram amounts to Ron Boelter in Mankato, Minnesota. Boelter then sold the cocaine to local distributors in Mankato. Schmidt was one of these local distributors. Schmidt met Boelter in 1985, the same year Boelter began selling drugs. In March of 1987, Boelter purchased his first kilogram of cocaine from Babich. Boelter then sold this cocaine in quarter-pound, multiple-ounce and ounce quantities to Randy Schmidt and four or five other regular customers. Until he was arrested on October 28, 1987, Boelter received two kilograms of cocaine from Babich approximately every other month. During that time, Boelter continued to sell this cocaine to Schmidt and other local distributors. Boelter testified that he occasionally "fronted" the cocaine to his customers and allowed them to pay him after they had resold it.

Two weeks before his arrest, Boelter received his last two-kilogram shipment of cocaine from Babich. Boelter sold approximately four ounces of this cocaine to Schmidt. After his arrest, Boelter agreed to cooperate with the authorities by taping conversations and meetings with Schmidt regarding Schmidt's drug debt. Two of these tapes were played for the jury. Boelter testified that Schmidt admitted to owing Boelter $5,500 for drugs in one of the taped conversations. One of the tapes played to the jury contained the following dialogue:

BOELTER: I kind of ah, got rid of everything I had to get rid of it. I'm workin' on somethin' ... (laughing) so scared and stuff. I got a guy

. . . .

SCHMIDT: Can you get any back? I've got people hollerin' tomorrow.

BOELTER: Uh uh.... Uh, well workin' on a deal right now—did you like the last—what'd you think of that last stuff? Do you want, should I try and get the same, or ...?

SCHMIDT: Yeah, but how long will it take?

BOELTER: Oh ... quite I just talked to him, so I'll, I'll know more in a, in a day or so. I'll catch ya ...

. . . .

SCHMIDT: I need it though ...

BOELTER: They just, he had to get unloaded and then I didn't, I didn't get as much as I had—I was waiting on part of that deal coming through and it didn't come through, and that's kinda what I'm waitin' on now.

. . . .

SCHMIDT: Well, how long do ya think it'll be at the max? Till the weekend?

BOELTER: Uh, I doubt it—that'd be pushing—Ah, I doubt it. Not the way it's gone the last couple times. You know the ... it was supposed to come through the other times, and it was less and it didn't.

SCHMIDT: It's not like you not to take care of it, just let you handle it. Anyhow ...

Tr. of Nov. 5, 1987 Conversation, Gov.Ex. 8A, at 3. Boelter explained that Schmidt was asking for more cocaine for his customers. The government argued that Schmidt's request constituted an admission that he had distributed all the cocaine (approximately 100 grams) he purchased from Boelter in less than one month, thus providing a basis for the charge of possession of cocaine with the intent to distribute.

Boelter also testified that from March 1987 through October 1987, he made several multi-ounce cocaine sales to Schmidt. A government expert witness testified that

this amount of cocaine constituted "dealer" quantities, not "personal use" quantities.

Schmidt opposed the government's proposed conspiracy instruction because it allowed the jury to find Schmidt guilty of conspiracy even if he was not aware of Babich's existence. The court resolved the dispute by submitting the following instruction:

In determining whether a conspiracy existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. But it is not enough that they simply met, discussed matters of common interest or acted in similar ways or perhaps even helped one another. You must find beyond a reasonable doubt that there was a joint plan to deal in drugs.

It is not necessary that the Government prove the defendant knew the identity of other conspirators or that he had direct contact with them. The Government must prove beyond a reasonable doubt, however, that the defendant knew that there were other conspirators.

Trial Tr. at 191. Neither party objected to any of the jury instructions. The jury convicted Schmidt and the court sentenced him to ten years' imprisonment.

## II.

Schmidt first claims that the jury had insufficient evidence to convict him of either possession with intent to distribute cocaine or conspiracy to possess with the intent to distribute cocaine. When a defendant attacks a conviction because of insufficiency of evidence, this court must "view the evidence, including all reasonable inferences that may be logically drawn from it, in the light most favorable to the Government." *United States v. Springer,* 831 F.2d 781, 784 (8th Cir.1987); *see also United States v. Patterson,* 886 F.2d 217, 219 (8th Cir.1989) (per curiam). Therefore, we must not reweigh evidence, but only decide if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781,

2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *see Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ On the charge of possession with the intent to distribute, Schmidt argues that the "vague" testimony of Boelter, Schmidt's supplier, should be discounted because Boelter was a drug addict, an admitted liar, and a plea-bargainer. Schmidt also attacks the veracity of the government's expert witness testimony. Even if all these claims are true, they are irrelevant. On a sufficiency of the evidence claim, we must resolve all evidentiary conflicts in favor of the government, and "can only reverse if we conclude that a reasonable fact-finder could not have found the defendant guilty beyond a reasonable doubt." *United States v. Peters,* 912 F.2d 208, 210 (8th Cir.1990) (citations omitted) (quoting *United States v. Shurn,* 849 F.2d 1090, 1093 (8th Cir.1988)).

■ To convict Schmidt of possession with the intent to distribute cocaine, the government had to prove beyond a reasonable doubt that Schmidt (1) knowingly possessed cocaine, and (2) possessed it with the intent to distribute. *United States v. Turpin,* 920 F.2d 1377, 1383 (8th Cir.1990). Schmidt does not contest that he knowingly possessed the cocaine; he argues that there was insufficient evidence to support a finding that he had the intent to distribute it. It is well-settled in this circuit that intent can be proven by circumstantial evidence. *See Turpin,* at 1383; *Patterson,* 886 F.2d at 219; *United States v. Matra,* 841 F.2d 837, 840 (8th Cir.1988).

The government presented sufficient evidence to support the finding that Schmidt intended to distribute. First, the jury heard several incriminating taped conversations between Schmidt and Boelter. Second, Boelter testified about these conversations, verifying their incriminating content. Third, Boelter also testified about his past dealings with Schmidt, and his belief that Schmidt resold the cocaine he purchased from Boelter. Fourth, the government presented an expert witness who testified that Schmidt possessed a "dealer" quantity of drugs, not a "personal use" quantity.

Furthermore, the quantity of cocaine combined with Schmidt's taped request for more of "it" just two weeks after receiving 100 grams of cocaine supports the jury's finding that Schmidt distributed cocaine. Viewing all of the evidence in the light most favorable to the government, we cannot say that a reasonable jury could not have found Schmidt guilty of possessing 100 grams of cocaine with the intent to distribute. Therefore, we affirm this conviction.

■ Schmidt also claims that the jury had insufficient evidence to convict him for conspiracy. To convict Schmidt for conspiracy, the government had to prove beyond a reasonable doubt that he "entered into an agreement with at least one other person and that the agreement has as its objective a violation of the law." *Turpin,* at 1384 (quoting *United States v. Foote,* 898 F.2d 659, 663 (8th Cir.1990)). The government may rely wholly on circumstantial evidence to prove the existence of a conspiracy. *Id.* As with Schmidt's other sufficiency claim, we must view all of the evidence in the light most favorable to the government and reverse only if a reasonable jury could not have found Schmidt guilty beyond a reasonable doubt. *Peters,* 912 F.2d at 210.

■ Schmidt claims that the government failed to prove anything more than a mere buyer-seller relationship, which cannot establish a conspiracy. *See United States v. Prieskorn,* 658 F.2d 631, 633 (8th Cir.1981). However, Schmidt's taped conversations with Boelter indicate more than just a buyer-seller relationship. In one conversation, Schmidt reveals his need for more cocaine for his "hollerin'" customers. This refutes his claim that he purchased cocaine only for his own personal use. Furthermore, his need for additional cocaine just two weeks after receiving 100 grams is evidence of his ability to distribute a significant amount of cocaine in a short period of time. In that same conversation Boelter refers to his supplier and past troubles in delivery. Boelter's casual references combined with Schmidt's response, "It's not like you not to take care of it," could be interpreted as an indication of Schmidt's awareness of the broader scope of the drug conspiracy. In addition to Boelter's testimony about Schmidt's drug transactions, the government's expert witness testified that Schmidt's knowledge and involvement was consistent with other narcotics distribution chains. Viewing all of the evidence in the light most favorable toward the government, we cannot conclude that a reasonable jury could not have found Schmidt guilty beyond a reasonable doubt of conspiracy to possess cocaine with the intent to distribute. Therefore, we must affirm the conspiracy conviction.

■ Schmidt next claims that the district court erred by not instructing the jury that a mere buyer-seller relationship does not establish a conspiracy and that the government must prove beyond a reasonable doubt that Schmidt had full knowledge of the conspiracy's general scope and purpose. Since Schmidt failed to object to any of these alleged errors at trial, we must review this claim under the plain error standard. Under this standard we can only grant Schmidt relief if the error "would result in a miscarriage of justice if left uncorrected." *United States v. Carey,* 898 F.2d 642, 644 (8th Cir.1990). Since district courts have wide discretion in formulating jury instructions, *United States v. Figueroa,* 900 F.2d 1211 (8th Cir.1990), and since the district court issued jury instructions that covered the substance of both Schmidt's buyer-seller theory and the proper elements of conspiracy, we hold that the jury instructions did not contain plain error.

■ Finally, Schmidt argues that he received ineffective assistance of counsel. This court has repeatedly declined to consider ineffective assistance of counsel claims that are first raised in the appellate court on direct appeal. *See United States v. Blackman,* 904 F.2d 1250, 1259–60 (8th Cir.1990); *United States v. Murphy,* 899 F.2d 714, 716 (8th Cir.1990). Since the trial court did not have an opportunity to develop a record on this issue, there is nothing other than Schmidt's allegations for this court to review. Consequently, we dismiss

Schmidt's ineffective assistance of counsel claim without prejudice, since it is more properly raised in a petition for habeas corpus relief.

### III.

For the foregoing reasons, we affirm Schmidt's convictions of possession with intent to distribute and conspiracy to possess with the intent to distribute.