**FINANCIAL HOLDING CORPORATION, a Missouri Corporation, Appellee,**

v.

**GARNAC GRAIN COMPANY, INC., Appellant.**

**No. 91–2411.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 8, 1992.

Decided May 22, 1992.

Rehearing Denied June 29, 1992.

---

Ronald C. Spradley, Kansas City, Mo., argued (Ronald C. Spradley and Douglas D. Silvius, on the brief), for appellant.

Major W. Park, Kansas City, Mo., argued (Major W. Park, Jr. and Rebecca L. McGinnis, on the brief), for appellee.

Before ARNOLD, Chief Judge, McMILLIAN and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Garnac Grain Company, Inc. (Garnac) appeals from an adverse jury verdict finding Garnac liable for a commission to Financial Holding Corporation (FHC) totaling 5% of the purchase price Garnac was obligated to pay for acquiring Shade Foods, Inc. (Shade Foods). The jury concluded the purchase price totalled $15 million. Accordingly, the district court [1] ordered Garnac to pay $750,-000, plus prejudgment interest in the amount of $285,903.43, plus costs, to FHC. Garnac contends, *inter alia*, that the district court erred in denying Garnac's motions for directed verdict and judgment notwithstanding the verdict (JNOV) on the basis that there was insufficient evidence to (1) establish that Joe Merriman (Merriman), Chairman of the Board of FHC, was acting on behalf of FHC, and (2) determine the purchase price that Garnac was obligated to pay for Shade Foods. Garnac also contends the district court erred in admitting plaintiff's exhibit 91 and committed numerous other trial errors. The district court denied Garnac's motions. We affirm.

I. BACKGROUND

Peter Stettler (Stettler), Executive Vice-President of Garnac, engaged in a casual conversation with Merriman in May of 1986 about the possibility of diversifying Garnac. Merriman indicated that he was aware of a company that might be of some

---

**1.** The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

interest to Garnac, but that the company was not presently for sale. This initial conversation went no further at that time.

Several weeks later, Stettler contacted Merriman and inquired about this company. Without divulging the name or any information about the company, Merriman contacted his long-time friend, Bill Shade (Shade), the principal shareholder of Shade Foods, and discussed Garnac's interest in learning more about Shade Foods. Shade agreed that Merriman could take Stettler on a tour of the company's Overland Park, Kansas plant on the condition that the tour be discreet and that no mention be made of Garnac's potential interest in purchasing the company. The tour was given and Stettler was impressed. Stettler requested that Merriman obtain financial information on the company.

On June 17, 1986, Merriman met with Stettler and presented two letters to him. The first letter demanded an assurance of confidentiality between the parties before divulging any financial information to Stettler. The second letter was a commission letter specifying that Garnac would agree to pay FHC a commission totaling 5% of the purchase price for Shade Foods, provided that Garnac purchased Shade Foods and that FHC did not have a partnership interest in the acquisition. Stettler signed the confidentiality letter but did not sign the commission letter.

Merriman then arranged a meeting between Stettler and Shade. During the next several months, Stettler and Shade negotiated directly without any further involvement from Merriman. On November 4, 1986, Stettler sent a letter to Merriman describing the negotiations up to that date.

A factual dispute exists between the parties as to the amount of the commission Garnac agreed to pay FHC. Garnac contends Stettler never agreed on its behalf to pay a commission totaling 5% of the purchase price for Shade Foods. As support for this contention, Garnac points out that Stettler never signed the commission letter. Instead, Garnac claims that the amount of commission was less than 5% and was to be determined at a later date. Merriman dis-

agrees. Although it is true that Stettler never signed the commission letter, Merriman argues that Stettler orally agreed to pay this 5% commission during a later telephone conversation in November of 1986.

On November 11, 1986, Shade rejected Stettler's offer to purchase Shade Foods and terminated all negotiations. Stettler immediately telephoned Merriman and asked for his assistance in contacting Shade in an attempt to reopen negotiations. After receiving confirmation, according to Merriman, that Garnac agreed to pay FHC a commission totaling 5% of the purchase price for Shade Foods, Merriman contacted Shade. Negotiations between Stettler and Shade reopened. Merriman then helped arrange a meeting between the parties in Switzerland. The deal was eventually finalized and Garnac purchased Shade Foods.

Jury Instruction Number 10 read as follows:

Your verdict must be for plaintiff [FHC] on its breach of oral contract claim if you believe:

FIRST, defendant [Garnac] offered to pay a commission of five percent of the purchase price of Shade Foods if Merriman would contact Shade Foods and attempt to reopen negotiations between defendant and Shade Foods resulting in the purchase of Shade Foods by defendant; and

SECOND, Merriman, with intent to accept defendant's offer to pay a five percent commission, contacted Shade Foods with the result that negotiations reopened leading to the purchase of Shade Foods by defendant; and

THIRD, when Merriman and defendant entered into the agreement, Merriman was acting on behalf of Financial Holding Corporation; and

FOURTH, defendant knew that the negotiations had been reopened resulting in the purchase of Shade Foods; and

FIFTH, defendant thereafter did not pay plaintiff a five percent commission of the purchase price of Shade Foods; and

SIXTH, plaintiff was thereby damaged. Appendix Volume I at 163.

The jury found in favor of FHC on its claim for breach of oral contract against Garnac as set forth in Jury Instruction Number 10. Therefore, logic dictates that the jury found the following facts: (1) Garnac agreed to pay FHC a commission of 5% of the purchase price for Shade Foods, if Merriman would contact Shade and attempt to reopen negotiations between Garnac and Shade Foods resulting in the purchase of Shade Foods by Garnac; (2) Merriman was acting on behalf of FHC when Merriman and Stettler entered into this oral agreement; and (3) Garnac breached the oral contract and owed FHC 5% of the purchase price as commission. The jury also found that the purchase price of Shade Foods was $15,000,000. Appendix Volume I at 177.

## II. DISCUSSION

The standard of review on a motion for directed verdict or for judgment notwithstanding the verdict is quite stringent. *Doe By Doe v. B.P.S. Guard Servs., Inc.,* 945 F.2d 1422, 1425 (8th Cir.1991); *see also Dace v. ACF Indus., Inc.,* 722 F.2d 374, 375 (8th Cir.1983). "[We] must analyze the evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility." *White v. Pence,* 961 F.2d 776, 779 (8th Cir.1992) (citation omitted). We may reverse only if:

> [A]ll of the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the [nonmoving party]. Furthermore, we must resolve direct factual conflicts in favor of [the nonmoving party], assume as true all facts in [the nonmoving party's] favor which the evidence tends to prove, and give [the nonmoving party] the benefit of all reasonable inferences.

*Doe By Doe,* 945 F.2d at 1425 (citation omitted).

### A. *Agency*

■ Garnac contends that there was insufficient evidence to conclude that Merriman was acting as an agent for FHC throughout the negotiations. Instead, Garnac contends that Merriman was acting in his personal, individual capacity. As support for this argument, Garnac points out that the commission letter and the confidentiality letter were sent by Merriman of "Financial Holding Company," as opposed to "Financial Holding Corporation," and were entitled "Personal." The jury disagreed with Garnac and found that Merriman was acting on behalf of FHC as its agent.

Viewing the entire record under the applicable standard of review, we find there was sufficient evidence to support the jury's finding that Merriman was acting as FHC's agent. First, Merriman testified for FHC in his capacity as Chairman of the Board of Directors of FHC. Second, FHC admitted the agency status of Merriman. Third, the commission letter, although unsigned, directed Garnac to pay the commission to FHC. And finally, Merriman testified that he contacted Shade in an attempt to reopen negotiations only after Stettler orally agreed to pay the 5% commission to FHC.

■ Garnac next contends the district court erred in refusing to give Garnac's requested jury instruction on the term "agency," patterned after several Missouri Approved Instructions. *See* Missouri Approved Instructions §§ 13.01, 13.02, and 18.01. The district court gave a jury instruction defining the term "agency" as "acting on behalf of." Garnac contends this instruction does not provide a meaningful definition. Instead, Garnac argues the term "agency" should have been defined as "those acts performed by the agent ... to further the business interests of the principal under the general authority and direction of the principal and that such acts arose naturally from the performance of the agent's work." We disagree.

■ A federal district court presiding over a diversity case is not bound to give the jury instruction requested by the litigants, nor is the court constrained to follow the language contained in a state's uniform jury instructions. *See H.H. Robertson Cos. v. V.S. DiCarlo Gen. Contrac-*

*tors, Inc.,* 950 F.2d 572 (8th Cir.1991). "The trial court has broad discretion to instruct the jury in the form and language it considers a fair and adequate presentation of [state] law." *Grogan v. Garner,* 806 F.2d 829, 836 (8th Cir.1986). Thus, "jury instructions are sufficient if they state the governing law fairly when read as a whole." *Bolin v. Black,* 875 F.2d 1343, 1348 (8th Cir.), *cert. denied,* 493 U.S. 993, 110 S.Ct. 542, 107 L.Ed.2d 539 (1989). Having reviewed the record and the applicable state law as stated in the Missouri Approved Instructions, we conclude the district court's jury instruction adequately and fairly stated Missouri law.

### B. *Purchase Price*

■ Garnac argues there was insufficient evidence from which the jury could determine the total price Garnac was obligated to pay for purchasing Shade Foods. As support for this argument, Garnac emphasizes that its understanding of the final purchase price consisted of $12 million in cash and up to an additional $3 million based upon a formula using Shade Food's 1989 after-tax earnings. No evidence of Shade Food's 1989 after-tax earnings was introduced at trial, and therefore, argues Garnac, the jury did not have sufficient evidence to determine the purchase price. FHC counters by pointing out that the sales contract and the testimony of several key people involved in the negotiations provided sufficient evidence for a reasonable jury to conclude the purchase price was $15 million. We agree with FHC. First, the contract between Garnac and Shade Foods specifically states the purchase price totals $15 million. The contract states in relevant part:

*Purchase Price*

[T]he Buyer intends to pay a total consideration of $15,000,000.00 as follows:

A. Cash at closing in the amount of $12 million; and

B. The balance of $3 million would be paid in the form of earnout payments ("Earnouts") out of after tax earnings in 1989.

Second, the trial testimony of Shade, Stettler, and Merriman provided evidence on the issue of the purchase price. Shade stated the purchase price was $15 million, which consisted of $12 million payable at the time of closing and an additional $3 million paid over a period of time based on certain earning performances. Stettler admitted on cross-examination that the final transaction amounted to $12 million in cash and a $3 million earnout. Finally, Merriman testified that Stettler telephoned him and indicated the final purchase price of the completed transaction was $15 million – $12 million in cash and $3 million deferred. After reviewing the record, we find there was sufficient evidence from which a reasonable jury could conclude the purchase price was $15 million.

■ Garnac next argues that the jury award should be limited by the statements made by FHC's attorney during closing argument at trial. The attorney for FHC stated the following in his closing argument:

If you agree that Merriman's telling the truth and that Stettler isn't, then you will find verdict form A for my client, [FHC], and you'll take the price from Exhibit 50, somewhere between $12 million and $12.4 million and my client will be entitled to exactly what he was always entitled to under that agreement that they reached in his office of a 5% commission.

Garnac argues the purchase price cannot be higher than $12.4 million. FHC disagrees and states, in effect, that statements made by trial counsel are not evidence and should be accorded no weight whatsoever.

We note that this issue was raised for the first time at oral argument. Because Garnac failed to properly preserve this issue for appeal, we must review this claim under the plain error standard. *United States v. Schmidt,* 922 F.2d 1365, 1369 (8th Cir.1991). "Under this standard we can only grant [Garnac] relief if the error 'would result in a miscarriage of justice if left uncorrected.'" *Id.* After reviewing the record, we hold that permitting the jury to conclude the purchase price was $15

million is not a "miscarriage of justice" and therefore does not constitute plain error. *See id.*

■ If we were to reach the merits of this issue, however, we hold that a jury should be free to disregard requests for damages made by trial counsel during closing argument when there is sufficient evidence on the record to reasonably conclude otherwise. The Ninth Circuit Court of Appeals addressed this issue in *Glovatorium, Inc. v. NCR Corp.*, 684 F.2d 658 (9th Cir. 1982). In *Glovatorium*, the attorney requested $253,000 in damages during closing arguments, and the jury awarded over $32,000 more. *Id.* at 664. Opposing counsel argued on appeal that the damages awarded were excessive based on the fact that during closing argument, the attorney had requested a lesser amount of damages. The court held that this fact was not an "adequate basis upon which to disturb the jury verdict," because "[t]he jury was entitled to disregard the amount asked for when there was other evidence from which the jurors could draw their own conclusions." *Id.* (citation omitted). We agree with the Ninth Circuit's reasoning on this issue.

In this case, as previously discussed, there was sufficient evidence from which a reasonable jury could conclude the purchase price was $15 million. Therefore, the jury was free to disregard the statement made by FHC's attorney during closing arguments concerning the purchase price for Shade Foods.

## C. *Federal Rule of Civil Procedure 34—Discovery*

Garnac contends the trial judge erred in admitting the duplicate original document (Exhibit 91) into evidence, because the document was not disclosed by FHC during discovery pursuant to Federal Rule of Civil Procedure 34. Garnac argues that it was unfairly surprised by Exhibit 91 and requests a new trial in order to correct this "manifest injustice." The district court denied Garnac's motion for new trial. We affirm.

During the direct examination of Merriman on rebuttal, counsel for FHC moved for the admission of Exhibit 91 and counsel for Garnac replied, "No objection, Your Honor." Appendix Volume II at 406. The trial judge then admitted Exhibit 91 into the record. *Id.* Because counsel for Garnac failed to object to the admission of Exhibit 91 at trial and thereby failed to properly preserve this issue for appeal, we must review this claim under the plain error standard. *United States v. Schmidt*, 922 F.2d 1365, 1369 (8th Cir.1991). "Under this standard we can only grant [Garnac] relief if the error 'would result in a miscarriage of justice if left uncorrected.'" *Id.* After reviewing the record, we hold that the admission of Exhibit 91 into evidence is not a "miscarriage of justice" and therefore does not constitute plain error. *Id.* The district court did not abuse its discretion in denying Garnac's motion for new trial. *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1200 (8th Cir.1990).

## III. CONCLUSION

We have, in the exercise of our duty, carefully considered the remaining eleven issues raised by Garnac. We have done so because we recognize that to the parties and counsel involved each allegation of trial court error is important. However, as our published Internal Operating Procedures advise, "Except in unusually complicated cases, a brief addressing more than four or five issues is often diffuse and gives the reader the impression that no single issue is very important." *Id.* at 19. In our view this was neither an unusual nor a complicated case let alone an "unusually complicated" case. We find each of the remaining issues raised by Garnac to be without merit. Accordingly, the order and judgment of the district court is affirmed.