# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1098

_____

Igor Kozlov

*Plaintiff - Appellant*

v.

Associated Wholesale Grocers, Inc. A Kansas Corporation

*Defendant - Appellee*

Pamela Scott, Personal Representative of the Estate of Michael E. Scott, Deceased; Roadtex Transportation Corp.; Roadtex Corp - Bayonne, NJ; Roadtex Corp - Colts Neck, NJ; Roadtex Logistics, LLC; Roadtex Transportation Management Corp.

*Defendant*s

_____

No. 15-1100

_____

Andrei Tchikobava

*Plaintiff - Appellant*

v.

Associated Wholesale Grocers, Inc., A Kansas Corporation

*Defendant - Appellee*

Pamela Scott, Personal Representative of the Estate of Michael E. Scott, Deceased; Albatross Express, LLC; Roadtex Corp - Bayonne, NJ; Roadtex Corp - Colts Neck, NJ; Roadtex Logistics, LLC; Roadtex Transportation Corp.; Roadtex Transportation Management Corp.

*Defendant*s

------------------------------

Nebraska Association of Trial Attorneys

*Amicus Curiae - Amicus on Behalf of Appellant(s)*

_____

No. 15-1101

_____

Igor Kozlov

*Plaintiff - Appellant*

v.

Associated Wholesale Grocers, Inc. A Kansas Corporation

*Defendant - Appellee*

Pamela Scott, Personal Representative of the Estate of Michael E. Scott, Deceased; Roadtex Transportation Corp.; Roadtex Corp - Bayonne, NJ; Roadtex Corp - Colts Neck, NJ; Roadtex Logistics, LLC; Roadtex Transportation Management Corp.

*Defendant*s

Pamela Scott

*Counter Claimant*

Albatross Express, LLC; Unick, LLC; Igor Kozlov

*Counter Defendants - Appellants*

_____

Appeals from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 19, 2015
Filed: March 23, 2016

_____

Before RILEY, Chief Judge, BEAM and KELLY, Circuit Judges.

_____

BEAM, Circuit Judge.

Igor Kozlov and Andrei Tchikobava (collectively "Plaintiffs"), employees of Albatross Express, LLC (Albatross), were injured when a tractor-trailer driven by Michael Scott, an employee of Associated Wholesale Grocers, Inc. (AWG), collided with their tractor-trailer on Interstate 80 (I-80) in rural Nebraska. At the time of the crash, Kozlov was driving, and Tchikobava was a passenger. Scott was killed in the crash. Kozlov and Tchikobava both filed personal injury lawsuits against AWG and Scott's estate. The lawsuits against Scott's estate were resolved prior to trial. At trial, the jury found that both Plaintiffs and AWG met their burdens of proof. The jury further found that Kozlov was 84% at fault, Tchikobava was 8% at fault, and AWG was 8% at fault. Because both Kozlov's and Tchikobava's negligence was equal to or greater than AWG's negligence, Plaintiffs were barred from recovery. Plaintiffs

now appeal the district court's[1] denial of recovery and request that the cases be reversed and remanded for a new trial. For the reasons discussed below, we affirm.

## I. BACKGROUND

Kozlov responded to an ad in a Russian newspaper in New York, in which Albatross specifically sought Russian drivers with little to no trucking experience. Albatross hired Kozlov to drive loads between New York and California. Because Kozlov was an inexperienced driver, Tchikobava, a more experienced driver with Albatross, was assigned to ride with him for the cross-country trip. Per company policy, inexperienced drivers, like Kozlov, were forbidden from driving during the night. Moreover, the experienced driver was not to be in the sleeper berth while the inexperienced driver was operating the truck. Before Albatross sent Kozlov on his first trip with Tchikobava, the owner of the company told Tchikobava to "keep an eye" on Kozlov because of his lack of experience. Tchikobava was to give Kozlov on-the-job training during the trip.

AWG is a grocery wholesaler operating seven warehouses, each of which has its own trucks and trailers. At the time of the collision, AWG's trucks were all equipped with onboard computers to electronically log and monitor the driver's activities. Scott had been employed by AWG since 1979.

On August 9, 2010, Scott was driving an AWG tractor-trailer on I-80. Kozlov was also driving a tractor-trailer on I-80 with Tchikobava as a passenger. At approximately one o'clock in the morning, Scott rear-ended the tractor-trailer driven by Kozlov. At the time of the crash Tchikobava was asleep in the sleeper berth of the vehicle. The collision caused the AWG vehicle to burst into flames, and Scott died

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

-4-

in the fire. Both Kozlov and Tchikobava were injured in the crash. The crash site showed no braking marks and no marks indicating any evasive maneuvers, supporting the inference that Scott did not try to stop, turn, or change lanes. The Nebraska State Patrol (NSP) arrived on the scene and began an investigation. They determined that the accident was a high speed collision, meaning either Scott was speeding or Kozlov was driving very slowly, or both. NSP analyzed the Electronic Control Module (ECM) on the Albatross truck driven by Kozlov. It showed that Kozlov had slowed down to 13.5 mph immediately before the collision. Due to severe fire damage, no information from the AWG truck's ECM could be retrieved, but the GPS computer system on the AWG truck showed that Scott had been driving at a speed of 70 mph until a short distance before the accident. As a result of the crash, Kozlov was charged with vehicular manslaughter and furnishing false information to law enforcement. He was eventually acquitted of the manslaughter charge but convicted of the false information charge.

Three civil suits were filed as a result of the crash: (1) a wrongful death case by Scott's estate against Kozlov and Albatross; (2) a personal injury lawsuit by Kozlov against AWG and Scott's estate; and (3) a personal injury lawsuit by Tchikobava against AWG and Scott's estate. Albatross settled the estate's wrongful death claim, and prior to trial, all remaining claims, other than Kozlov's and Tchikobava's personal injury claims against AWG, were resolved by dismissal or stipulation. The cases were then consolidated for all purposes, including trial. The personal injury suits against AWG proceeded to trial on November 18, 2014. The jury found for AWG on all claims. The jury form instructed the jury to determine whether the Plaintiffs had met their burdens and whether defendant AWG met its burden. If both Plaintiffs and AWG met their burdens of proof, the jury was to assign a percentage of negligence to each party. The jury found that all parties met their burdens of proof and allocated negligence as follows: Kozlov was 84% at fault, Tchikobava was 8% at fault, and AWG was 8% at fault. The jury was then tasked with assigning economic and noneconomic damages for each plaintiff. The jury

-5-

awarded Kozlov $300,000 in economic damages and $20,000 in noneconomic damages. The jury awarded Tchikobava $842,000 in economic damages and no noneconomic damages. However, because both Kozlov's and Tchikobava's negligence was equal to or greater than AWG's negligence, both were barred from recovery under state law. See Neb. Rev. Stat. § 25-21,185.09. This appeal followed.

Tchikobava and Kozlov both appeal the district court's decision to allow the negligence of all three parties to be assessed by the jury on a single verdict form. Tchikobava also argues that the district court (1) failed to properly instruct the jury on proximate cause and (2) erred in calculating his noneconomic damages. Kozlov argues the district court erred (1) in its jury instructions; (2) by submitting negligence issues to the jury; (3) by allowing Dr. Sokol's expert opinion in evidence; (4) by failing to allow him to amend his complaint; and (5) by excluding evidence of Scott's failing health and prior accident.

## II.    DISCUSSION

Because this is a diversity case, we apply Nebraska law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State."). Nebraska recognizes contributory negligence as a defense against certain civil actions, such as this case. Neb. Rev. Stat. § 25-21,185.09. According to the statute:

> Any contributory negligence chargeable to the claimant shall diminish proportionately the amount awarded as damages for an injury attributable to the claimant's contributory negligence but shall not bar recovery, *except* that if the contributory negligence of the claimant is *equal to or greater than* the total negligence of all persons against

whom recovery is sought, the claimant shall be totally barred from recovery.

Id. (emphasis added). "This modified comparative negligence statute, with its equal-fault bar, replace[d] the previous standard," which barred a plaintiff from recovery if the claimant's contributory negligence "was more than slight or the defendant's negligence was less than gross in comparison." Dutton v. Travis, 551 N.W.2d 759, 762 (Neb. Ct. App. 1996). Also, "determination of apportionment [of negligence among the parties] is *solely* a matter for the fact finder." Baldwin v. City of Omaha, 607 N.W.2d 841, 853 (Neb. 2000) (emphasis added). Here, because the jury found Kozlov 84% at fault, he was barred from recovery. Kozlov's contributory negligence in the accident, according to the jury's sole discretion, was greater than AWG's negligence (8%). Similarly, Tchikobava's contributory negligence (8%) was equal to AWG's negligence, and thus, he was also barred from recovery.

### A.    Single Jury Form

Plaintiffs take issue with the jury instructions used in the case, as well as the jury's verdict. Plaintiffs allege that the district court erred when it instructed the jury to allocate negligence among all three parties on a single verdict form rather than using two separate statements of the case and two separate verdict forms. Their arguments are based on the underlying principle that the trial court erred in consolidating the lawsuits for trial. We disagree.

This court reviews a district court's decision to give particular jury instructions for an abuse of discretion, and the trial judge is not required to give the requested instructions. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 720 (8th Cir. 2008). Instructions are not reviewed individually but are taken as a whole. Id. The jury instructions must correctly state the law, cannot be misleading, and should cover all issues submitted to the jury for decision. Tapp v. Blackmore Ranch, Inc., 575

N.W.2d 341, 346 (Neb. 1998). "Reversal is only warranted if a party's substantial rights are prejudiced by instructional error." Sherman, 532 F.3d at 720. To obtain a reversal on the basis of erroneous jury instructions, "the appellant has the burden of showing that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the tendered instruction." Fales v. Books, 570 N.W.2d 841, 843 (Neb. 1997).

Plaintiffs' assertion that the cases should not have been consolidated is contrary to Nebraska law and judicial efficiency. Consolidation was necessary because this case involved one accident with three potential tortfeasors. When a case involves multiple parties, all of whom are potentially at fault, the fault of all parties must be decided in one trial. Lackman v. Rousselle, 585 N.W.2d 469, 481 (Neb. Ct. App. 1998). "[A] system of allocation of fault that ignores patently responsible tort-feasors is needlessly impractical if a single action can include and adjudicate all parties potentially liable . . . ." Id. First, separate verdict forms were simply not appropriate here because it would have allowed for the possibility of inconsistent verdicts. Having a single verdict form enabled the jury to correctly apportion negligence among the three parties. Second, neither plaintiff objected to the consolidation, and there were no subsequent requests to bifurcate the lawsuits. Because Plaintiffs failed to object, they waived the objection. In re Ashley W., 821 N.W.2d 706, 716 (Neb. 2012).

Tchikobava's main objection to the jury form and jury instructions is premised on his belief that he was harmed by the jury's assessment of fault against Kozlov. Tchikobava argues that Kozlov's negligence should not have been considered in relation to his own negligence because the Nebraska Workers' Compensation Act

makes Kozlov immune from suit by Tchikobava.[2]   Tchikobava believes that had there been two separate trials or even two separate jury forms, the jury would have found Kozlov more at fault and him not at fault at all.  Had this been the result, Tchikobava would have recovered damages.  We disagree with this reasoning.  Here, the jury clearly decided that Tchikobava's fault for the accident was equal to AWG's fault.  Had there been two different forms, the jury could have allocated the same amount of fault to Kozlov (84%) and then assessed 50% of the fault to both Tchikobava and AWG on a separate form.  This is the same result (but with inconsistent percentages) for AWG.  Under Nebraska law, Tchikobava would still recover nothing.  See Neb. Rev. Stat. § 25-21,185.09 (stating that "if the contributory negligence of the claimant is equal to or greater than the total negligence of all persons against whom recovery is sought, the claimant shall be totally barred from recovery").

Also, there are several cases where Nebraska courts have allowed a defendant to argue that a plaintiff's otherwise immune employer was the sole proximate cause of the accident.  See Tapp, 575 N.W.2d at 348; Steele v. Encore Mfg. Co., 579 N.W.2d 563 (Neb. Ct. App. 1998).  In Steele the court stated:

> Regardless of the plaintiff's [sic] not being entitled to tort compensation from the employer, if the employer's actions are the sole proximate cause of the employee's injuries, then it follows that the defendant's conduct is not a proximate cause, and the defendant should be entitled to argue and have the jury instructed accordingly.

---

[2]Under the Workers' Compensation Act employees surrender "their rights to any other method, form, or amount of compensation or determination thereof than as provided in the Nebraska Workers' Compensation Act."  Neb. Rev. Stat. § 48-111. "The exemption from liability given an employer and insurer by this section shall also extend to all employees . . . ."  Id.

579 N.W.2d at 568. Contrary to Tchikobava's belief, he was not prejudiced by the use of a joint jury form, and thus, he is not entitled to a new trial on this basis. See Sherman, 532 F.3d at 720. Moreover, the verdict form used by the court properly stated the law and was in accordance with the facts of the case.

> Looking at the verdict form itself in light of the merits of the case:

> A jury verdict will not be disturbed on appeal . . . unless it is so clearly against the weight and reasonableness of the evidence and so disproportionate as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record, or that the jury disregarded the evidence or rules of law.

Mahoney v. Neb. Methodist Hosp., Inc., 560 N.W.2d 451, 455 (Neb. 1997). There is no evidence that supports overturning the jury's verdict in this case. The jury's assessment of each party's negligence and the resulting damages are not clearly against the weight and reasonableness of the evidence. Thus, the jury's decision will not be disturbed.

### B. Tchikobava's Separate Arguments on Appeal

### 1. Jury Instructions on Proximate Cause

Tchikobava claims that the district court erred by failing to properly instruct the jury on proximate cause. He argues that the court should have used Nebraska Jury Instruction, Second Edition, 3.44 or 3.42. We disagree. "A federal district court presiding over a diversity case is not bound to give the jury instruction requested by the litigants, nor is the court constrained to follow the language contained in a state's uniform instructions." Sherman, 532 F.3d at 720 (quoting Fin. Holding Corp. v. Garnac Grain Co., 965 F.2d 591, 594 (8th Cir. 1992)). This court reviews a district court's decision to give particular jury instructions for an abuse of discretion, looking

at the jury instructions as a whole and reversing only if the instruction was prejudicial to the claimant.  Id.

The district court was correct to use neither uniform instruction proffered by Tchikobava. These proffered jury instructions deal with comparing the negligence of a nonparty.  See NJI2d Civ. 3.44 & NJI2d Civ. 3.42.  Jury Instruction 3.44 is titled "Proximate Cause–Conduct of Nonparty Third Person."  NJI2d Civ. 3.44.  This instruction is only to be used when the defendant is claiming a nonparty was the sole proximate cause of the accident.  See Worth v. Kolbeck, 728 N.W.2d 282 (Neb. 2007).  Here, all of the actors involved are parties to the lawsuit.  Thus, use of Instruction 3.44 is inapposite.  Similarly, Instruction 3.42 is inappropriate.  This instruction should be used "when the evidence is sufficient to raise a jury question as to whether a defendant's or a third person's negligence proximately caused or proximately contributed to a plaintiff's injuries."  Id. at 292.  In other words, "[t]his is an appropriate instruction when *only one* joint tort-feasor is sued so that a jury does not lay the responsibility at the doorstep of the absent tort-feasor."  Smith v. Kellerman, 541 N.W.2d 59, 66 (Neb. Ct. App. 1995) (emphasis added).

In this case, however, there was no absent tortfeasor and thus both instructions offered by Tchikobava were inapposite, because all potential tortfeasors were parties to the lawsuit.  Simply put, Instructions 3.44 and 3.42 do not apply in cases of comparative negligence where apportionment against all parties is required. Moreover, Tchikobava was not prejudiced.  The jury found that his negligence was equal to AWG's negligence.  As such, if the jury completely ignored the negligence of Kozlov and apportioned negligence only as between AWG and Tchikobava, Tchikobava would still be precluded from recovering.  See Neb. Rev. Stat. § 25-21,185.09.  Thus, there was no abuse of discretion, and the jury was properly instructed.

-11-

## 2. Noneconomic Damages

Tchikobava also argues that the noneconomic damage calculation was inadequate and wholly inconsistent with the economic damages, which result requires a new trial on damages. Again, we disagree. Trial courts are in the best position to determine the correct amount of damages. Sterling v. Forney, 813 F.2d 191, 192 (8th Cir. 1987). Thus, the inadequateness or excessiveness of a jury award will be reviewed "only in those rare situations in which there is a plain injustice or a monstrous or shocking result." Id.

First, Tchikobava waived this argument by failing to request a new trial. See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 401 (2006). "In the absence of exceptional circumstances . . . the issue of [inadequateness] of a jury verdict must be presented first to the District Court in a motion for a new trial in order to preserve the issue for appellate review." DeWitt v. Brown, 669 F.2d 516, 524 (8th Cir. 1982). A motion for a new trial is required because "[d]etermination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." Unitherm Food Sys., 546 U.S. at 401 (alteration in original) (quoting Cone v. W. Va. Pulp & Paper Co., 330 U.S. 212, 218 (1947)). Tchikobava argues that the verdict is inadequate as a matter of law because he was awarded $842,000 in economic damages but nothing for noneconomic damages. According to Tchikobava, this is irreconcilable because the noneconomic impact of the accident (described in the jury instructions as pain, permanent physical impairment, value of loss of companionship, etc.) is the underlying cause of his medical expenses, future medical expenses, lost wages, and future lost wages, which comprise the economic damages. Nonetheless, "[s]ince there was no motion for new trial . . . we have no basis for reviewing the trial court's exercise of discretion and therefore no basis for reviewing the adequacy of damages." Baker v. Dillon, 389 F.2d 57, 58 (5th Cir. 1968).

Second, if the issue were properly preserved for appellate review, we conclude that the damages are adequate. To reverse and remand for a new trial on damages, this court would have to find "plain injustice or a . . . shocking result" Sterling, 813 F.2d at 192. The jury found Tchikobava and AWG equally at fault for the accident. If Tchikobava's percentage of negligence does not decrease to less than AWG's negligence, increasing the amount of damages does nothing under Nebraska law; he is still barred from recovery. See Neb. Rev. Stat. § 25-21,185.09. The amount of damages cannot rise to the level of "plain injustice" if the plaintiff is not entitled to recover damages anyway. Moreover, an examination of the medical evidence proves that the damages awarded are not shocking. After the accident Tchikobava was treated and released the same day with very minor injuries. No surgery was required. Additionally, AWG's medical expert found that Tchikobava did not sustain any acute injury from the accident and that preexisting conditions due to his weight likely caused the majority of Tchikobava's pain. Tchikobava admitted he had medical issues from a prior accident in which he was hospitalized and required to participate in physical therapy. Based on the medical evidence on record, this is not one of the rare cases warranting a review of the noneconomic damages awarded by the jury.

## C.    Kozlov's Separate Arguments on Appeal

### 1.    Jury Instructions

Kozlov argues that he was prejudiced by misleading jury instructions that confused the jury and is thus entitled to a new trial. According to Kozlov, instruction number 10, which articulated the burden of proof, undid comparative negligence when it used the term "*the* proximate cause" because it required him to show that the defendant's negligence was the *sole* proximate cause rather than just *a* proximate cause.

The fallacy in Kozlov's argument is that even with the allegedly higher burden, the jury found that he satisfied the burden. Too, the jury allocated fault among the three parties. Thus, the jury clearly understood that AWG's negligence did not have to be the *sole* proximate cause of the accident before the Plaintiffs could recover. Because Kozlov was not prejudiced by the jury instruction, reversal is not necessary. Sherman, 532 F.3d at 720. Also, because the instruction does not appear to have misled the jury, a new trial is unnecessary. Burry v. Eustis Plumbing & Heating, Inc., 243 F.3d 432, 434 (8th Cir. 2001).

## 2. Submission of Negligence to the Jury

Next, Kozlov argues that the district court erred by submitting issues to the jury when the evidence was insufficient to sustain an affirmative finding on those issues. He claims the following issues should not have been submitted to the jury: (1) Kozlov's negligence regarding lights on the trailer; (2) Kozlov's qualifications as a truck driver; and (3) Tchikobava's negligence in failing to train or supervise Kozlov. The Nebraska Supreme Court has established the following rules when determining whether there was sufficient evidence to submit an issue to the jury:

> [A] party is entitled to have all conflicts in the evidence resolved in his favor and the benefit of every reasonable inference that may be deduced from the evidence, and if reasonable minds might draw different conclusions from a set of facts thus resolved in favor of a party, the issues of negligence and contributory negligence are for a jury. Negligence is a question of fact . . . . Where there is a reasonable dispute as to what the physical facts show, the conclusions to be drawn therefrom are for the jury.

Stauffer v. Sch. Dist. of Tecumseh, 473 N.W.2d 392, 397 (Neb. 1991) (quoting Pearson v. Richard, 271 N.W.2d 326, 329-30 (Neb. 1978)). As illustrated below, each of the issues highlighted by Kozlov on appeal were properly submitted to the

-14-

jury given the conflicting evidence supporting them and the varied inferences that could be derived therefrom.

In regards to whether Albatross's trailer had working lights at the time of the accident, the only person who could tell for certain was Scott, who is now deceased. However, NSP conducted an investigation as soon as they arrived at the scene of the accident and found no evidence of hot shock, which is the best evidence of working lights, aside from an eye witness. Ultimately, NSP's results were inconclusive as to whether the lights were on at the time of the accident. NSP did, however, find evidence of a damaged wire, which suggests poor maintenance. It is also noteworthy that Tchikobava was previously cited for operating a tractor-trailer without properly working lights. Based on this evidence, the district court's decision to submit this factual issue to the jury was not an abuse of discretion.

The question of whether Kozlov was qualified to drive the tractor-trailer was also submitted to the jury. After the crash, one of the police officers discovered that Kozlov was not qualified to drive the tractor-trailer because of his inability to speak and read English. There was also evidence that Albatross failed to train Kozlov prior to operating the tractor-trailer. Additional testimony suggested that Kozlov did not know how to correctly shift gears in the truck. These facts support the court's decision to submit this issue to the jury.

Finally, Tchikobava's alleged negligence in failing to train and supervise Kozlov was submitted to the jury. Tchikobava was assigned to drive with Kozlov, a new and inexperienced driver, to train and supervise him. Kozlov was not supposed to drive at night, and Tchikobava was not supposed to be resting in the sleeper berth while the inexperienced driver was operating the truck. Tchikobava was specifically instructed to "keep an eye on Igor" because of Kozlov's lack of experience. Kozlov admitted that the purpose of having Tchikobava ride along was to assure he could drive the truck. Tchikobava testified that Kozlov asked very basic questions

-15-

regarding switching gears, operating the clutch, and the location of the brakes. Tchikobava also admitted that new drivers were forbidden from driving at night. According to Kozlov, he was never given any instructions on how to drive the truck. Based on this evidence and testimony, there was sufficient evidence to submit this claim to the jury.

### 3.    Dr. Ted Sokol's Expert Opinion

At trial Dr. Ted Sokol, one of AWG's expert witnesses, opined that Scott was unable to perceive and react to Kozlov's slow moving vehicle in time to avoid the collision. Kozlov claims that admission of this expert witness testimony was error because there was no scientific basis for his opinion. It is within "the broad discretion of the trial court" whether to allow specific expert testimony. Bradshaw v. FFE Transp. Servs., Inc., 715 F.3d 1104, 1107 (8th Cir. 2013) (quoting Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003)). The trial court's decision on this matter "will not be disturbed on appeal absent an abuse of that discretion." Id. (quoting Anderson, 340 F.3d at 523). "An abuse of discretion occurs 'when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when . . . the court, in weighing [all proper] factors, commits a clear error of judgment.'" EEOC v. Prod. Fabricators, Inc., 666 F.3d 1170, 1172 (8th Cir. 2012) (quoting Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984)).

Federal Rule of Evidence 702 specifies the qualifications for expert witness testimony. An expert is one who has specialized "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Expert testimony should only be used if it will help the jury better understand the evidence, the "testimony is based on sufficient facts or data," the testimony is based on "reliable principles and methods," and the "expert has reliably applied the principles and methods to the facts of the case." Id. The standards in Rule 702 are flexible. See Daubert v. Merrell Dow

Pharm. Inc., 509 U.S. 579, 595 (1993). Rule 702 stresses "scientific validity–and thus the evidentiary relevance and reliability–of the principles that underlie a proposed submission." Id. at 594-95. "[P]rinciples and methodology, not . . . the conclusions that they generate" should be the focus of the analysis. Id. at 595.

Dr. Sokol has his bachelor's and master's degrees in civil engineering. He is also a professional registered engineer. Because of his level of knowledge and expertise, he qualifies as an expert. For his perception-reaction time analysis, which is the testimony in question, Dr. Sokol used Integrated Driver Response Research (IDRR), which is essentially a software program. His entire analysis was based on IDRR, and his independent calculations were based on facts from the case. IDRR is commonly relied on in the accident-reconstruction field. As part of his testimony, Dr. Sokol explained the scientific theory behind the software program. Thus, Dr. Sokol's opinions are admissible under the Federal Rules of Evidence, and the district court did not abuse its discretion.

### 4.     Motion for Leave to Amend the Complaint

On September 5, 2014, approximately two months before trial, Kozlov moved for leave to amend his complaint to allege that AWG knowingly put a medically unfit driver in its truck. The magistrate judge denied the motion stating that it would prejudice AWG and delay trial. Kozlov appeals the decision arguing that he discovered evidence of which he was previously unaware but which was known to AWG, the nonmoving party. Kozlov discovered that Scott had been in an accident where he suffered a fractured skull and serious brain injury. Dr. Larson, the doctor who completed Scott's Commercial Driver Fitness Determination in 2010, admitted in his September 5, 2014, affidavit that Scott failed to mention he had ever suffered a fractured skull, which would have been important medical history for a commercial driver's license.

This court reviews a district court's denial of a motion to amend a complaint for abuse of discretion. Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008). "A court abuses its discretion when it denies a motion to amend a complaint unless there exists undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Id. In most cases, however, decisions on such matters are "left to the sound discretion of the district court." Id.

Federal Rule of Civil Procedure 15(a) states, "The court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[t]he policy favoring liberal allowance of amendment does not mean that the right to amend is absolute." Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989). A motion to amend should be denied if the plaintiff is "guilty of undue delay, bad faith, dilatory motive, or if permission to amend would unduly prejudice the opposing party." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224 (8th Cir. 1994). Moreover, "[w]hen a considerable amount of time has passed since the filing of a complaint and the motion to amend is made on the eve of trial and will cause prejudice and further delay, courts require the movant to provide some valid reason for the belatedness of the motion." Thompson-El, 876 F.2d at 67. Here, Kozlov's motion came four years after the filing of the complaint and two months before trial. And, AWG would have been prejudiced by the amendment. Kozlov gave no cause or valid reason for failing to amend the complaint earlier. Therefore, the motion to amend was properly denied.

More importantly, Rule 15(a) does not apply when, as here, the "district court has established a deadline for amended pleadings under FRCP 16(b)." In re Graphics Processing Units Antitrust Litig., 540 F. Supp. 2d 1085, 1090 (N.D. Cal. 2007). The June 6, 2011, scheduling order established an amendment deadline of June 29, 2011. Thus, "the liberal policy favoring amendments no longer applie[d]" at the time Kozlov filed his motion, more than three years after the amendment deadline. Id.

-18-

Rather, for Kozlov to amend his complaint after the amendment deadline, he needed to make "a showing of good cause." Id., Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

When considering good cause for an amended complaint, the diligence of the party seeking the amendment is an important consideration. Caribbean Parts Agency, Inc. v. Hastings Mfg. Co., 262 F.R.D. 88, 91 (D.P.R. 2009). Motions that would prejudice the nonmoving party by "requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy" are particularly disfavored. Steir v. Girl Scouts of the U.S.A., 383 F.3d 7, 12 (1st Cir. 2004) (quoting Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 52-53 (1st Cir. 1998)). Here, Kozlov did not act diligently in reviewing the evidence and making the motion to amend his complaint. With the exception of Dr. Larson's affidavit, Kozlov had access to almost all of the evidence regarding Scott's prior accident and medical condition at least eighteen months before the motion to amend. In its April 19, 2013, order the magistrate judge directed Mrs. Scott to "make herself available in Omaha, Nebraska to provide deposition testimony regarding the 1997 accident involving Mr. Scott, including, but not limited to, the injuries Mr. Scott sustained in the accident." In its Rule 26 initial disclosures mailed on January 14, 2011, AWG produced, among other documents, Scott's driver qualification file, Scott's accident file and Scott's personnel file. Kozlov had this evidence regarding Scott's medical conditions for three years before he filed the motion to amend. Moreover, allowing Kozlov to amend his complaint would have required more discovery and new experts because negligent hiring was never alleged before this request to amend. Because Kozlov did not make the required good-cause showing for an amendment under Federal Rule of Civil Procedure 16(b)(4), the district court did not abuse its discretion by denying the motion.

### 5. Evidence of Scott's 1997 Accident and Health

Kozlov argues that the district court erred when it excluded evidence of Scott's 1997 accident and his questionable health. "A district court is given 'broad discretion' to determine the relevance of evidentiary matters." United States v. Wilkens, 742 F.3d 354, 363 (8th Cir. 2014) (quoting Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 885 (8th Cir. 2006)). Thus, a district court's decision will not be overturned absent a "clear abuse of discretion." Id. (quoting Suggs v. Stanley, 324 F.3d 672, 682 (8th Cir. 2003)).

First, evidence pertaining to Scott's 1997 accident was not relevant to any trial issue. Prior accidents are only relevant if "the accidents or occurrences were substantially similar; i.e., the prior accidents or occurrences happened under substantially the same circumstances and were caused by the same or similar defects and dangers." Shipler v. Gen. Motors Corp., 710 N.W.2d 807, 834 (Neb. 2006). The 1997 accident involved only the vehicle he was driving and was caused by icy roads. The accident in this case involved two tractor-trailers and was caused by negligence of the parties. Thus, the 1997 accident is not relevant to this case. Moreover, the prior accident occurred thirteen years before this accident. Therefore, it is far too remote to be relevant to this case. See Hicks v. Six Flags Over Mid-America, 821 F.2d 1311, 1315-16 (8th Cir. 1987). Finally, evidence of this accident would not be admissible under the Federal Rules of Evidence. It does not make any fact of consequence "more or less probable." Fed. R. Evid. 401.

Second, Kozlov appeals the district court's decision to exclude evidence of Scott's medical conditions, which resulted from the 1997 accident. AWG claims that this is not an issue in the case because the parties agreed to dismiss the personal representative of Scott's estate. Also, Plaintiffs did not allege negligent hiring or negligent retention. Kozlov argues that this evidence gives insight into the cause of the rear-end collision, as well as the credibility of each party. In response, AWG

states that there is no evidence that Scott's health affected his ability to drive the tractor-trailer. The standard for relevancy under Rule 401 is "any tendency," which is an extremely low burden. Fed. R. Evid. 401(a).

Kozlov pursued AWG on the theory of vicarious liability. Kozlov's complaint states that the accident involved one of AWG's employees who was acting within the scope of his employment. Therefore, if Scott's health caused him to be unable to properly operate the vehicle, which in turn contributed to the accident, this evidence is relevant. It makes it more probable that Scott, and therefore AWG, was at fault for the collision. However, the abuse-of-discretion standard gives trial courts "broad discretion" when deciding evidentiary issues. Wilkens, 742 F.3d at 363. This court will not set aside a judgment for wrongly excluded evidence unless the court is "left with 'no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted.'" Stolzenburg v. Ford Motor Co., 143 F.3d 402, 406 (8th Cir. 1998) (quoting Adams v. Fuqua Indus., Inc., 820 F.2d 271, 273 (8th Cir. 1987)). This evidence does not reach the standard necessary to set aside the jury's verdict.

## III.  CONCLUSION

The judgment of the district court is affirmed.

_____