# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2572
_____

Linda Scobee; Michael Scobee

*Plaintiffs - Appellants*

v.

USAA Casualty Insurance Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 16, 2025
Filed: February 23, 2026
_____

Before SMITH, ARNOLD, and SHEPHERD, Circuit Judges.
_____

SMITH, Circuit Judge.

Michael Scobee (Mr. Scobee) was seriously injured in a motorcycle accident involving William Norris (Mr. Norris), an individual insured by USAA Casualty Insurance Company (USAA). Following a successful negligence suit in Missouri state court against Mr. Norris, Mr. Scobee and his wife Linda Scobee (Mrs. Scobee) sued USAA alleging a violation of Kentucky's Unfair Settlement Practices Act

(KUCSPA) and common-law bad faith.[1] The district court[2] entered an order granting USAA's motion for summary judgment on the KUCSPA claim,[3] limiting testimony from the Scobees' expert, denying the Scobees' motion for summary judgment, and denying the Scobees' motion to exclude the testimony of USAA's expert. The Scobees appeal. We affirm.

## I. *Background*

On April 4, 2015, Mr. Scobee was injured in an accident in Louisville, Kentucky. The accident involved Mr. Scobee, who was driving his motorcycle and Mr. Norris, who was driving a rental car. Mrs. Scobee, driving a separate vehicle, trailed her husband's motorcycle and Mr. Norris on the highway. She observed Mr. Norris changing lanes and driving dangerously close to her vehicle and Mr. Scobee's motorcycle. She then passed Mr. Norris and also passed her husband. While Mrs. Scobee was ahead of the other vehicles, the accident occurred. Mrs. Scobee did not see the accident. The Scobees sued Mr. Norris and his wife Lauren Norris (Mrs. Norris) alleging that Mr. Norris caused the accident by negligently striking Mr. Scobee's motorcycle and forcing him off the road. The Norrises denied the allegations. They asserted that Mr. Scobee lost control of his motorcycle and crashed. Mr. Scobee suffered serious injuries from the crash.

USAA had issued a $100,000 automobile liability policy to the Norrises. On September 18, 2015, the Scobees, through counsel, made a formal demand to USAA for $5.25 million or the policy limit if the policy limit was less than $5.25 million. In the five-page demand letter, the Scobees provided their theories of liability and

---

[1]The Scobees filed their KUCSPA and common-law bad faith claim in Kentucky state court. USAA removed the case to federal district court.

[2]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

[3]The Scobees' common law bad faith claim was dismissed in the district court's order granting in part USAA's motion for judgment on the pleadings. R. Doc. 81. The Scobees do not appeal that dismissal.

damage calculations. The Scobees' letter expressed that the demand would remain open for 30 days from the date that USAA received the letter, unless USAA rejected it sooner or the Scobees withdrew it. On October 6, 2015, USAA responded that based on its investigation, Mr. Norris did not negligently cause the mishap. USAA requested that the Scobees provide any proof of liability as well as their theory of negligence against Mr. Norris. The Scobees never responded to the request nor renewed their demand.

Instead, on December 7, 2015, the Scobees filed a lawsuit against the Norrises in a federal district court in Kentucky alleging that Mr. Norris's negligence caused Mr. Scobee's injuries. Subsequently, the Scobees voluntarily dismissed the Kentucky lawsuit and refiled it in Missouri state court for jurisdictional reasons ("Underlying Litigation").[4] Mr. Norris died before trial, and Mrs. Norris was substituted as the defendant ad litem. The state trial eventually resulted in a $7 million jury verdict for the Scobees. On January 16, 2020, the trial court denied Mrs. Norris's post-trial motion to reduce the jury award to the policy limit pursuant to Mo. Rev. Stat. § 537.021 and entered a $7 million judgment for the Scobees against Mrs. Norris.

Later that month, on January 27, 2020, USAA wrote a letter to the Scobees offering the $100,000 policy limit in full satisfaction of the judgment in the Underlying Litigation. The Scobees did not respond. A year and a half later, on June 28, 2021, USAA filed a declaratory judgment action in the Eastern District of Missouri seeking a declaration that payment of the $100,000 policy limit would satisfy the judgment obtained by the Scobees in the Underlying Litigation against the Norrises.[5] On May 14, 2024, in the declaratory judgment litigation, USAA filed

---

[4]Ultimately, Mrs. Norris was dismissed from the lawsuit.

[5] We grant the Scobees' motion requesting that we take judicial notice of (1) Mr. Norris's Motion in Limine in the Underlying Litigation and (2) pleadings from the declaratory judgment action, *USAA Cas. Ins. Co. v. Scobee*, case number 4:21-cv-779.

a motion for leave to deposit funds into the court's registry in satisfaction of the judgment in the Underlying Litigation. On June 17, 2024, the district court granted that motion in part and it denied in part. It held that USAA could pay towards the judgment in the Underlying Litigation by depositing the policy limit into the court's registry but explained that it would not order the Scobees to enter a satisfaction of judgment. On July 11, 2024, USAA filed a notice of deposit of funds, notifying the court that it deposited $102,036.66 into the court's registry on July 8, 2024, which was the policy limit plus interest.

While the declaratory judgment action was pending, on October 10, 2021, the Scobees filed a lawsuit in Kentucky state court against USAA alleging a violation of the KUCSPA and common law bad faith. USAA removed the case to the Eastern District of Kentucky based on diversity jurisdiction. The case was subsequently transferred to the Eastern District of Missouri. The district court granted summary judgment for USAA on the KUCSPA claim; limited testimony from the Scobees' expert, Peter J. Hildebrand; denied the Scobees' motion for summary judgment; and denied the Scobees' motion to exclude the testimony of USAA's expert, Bill Woolums. The Scobees appeal.

II. *Discussion*

The Scobees argue that the district court erred when it granted USAA's motion for summary judgment and limited the testimony of their expert. Further, the Scobees contend that if we reverse the district court's grant of summary judgment in USAA's favor, we should also reverse its decision denying as moot the Scobees' motion to exclude USAA's expert. Upon review, we conclude that the district court did not err.

A. *The Scobees' Expert Witness*

The district court limited the testimony of the Scobees' expert witness. The Scobees contend that the court erred and that its limitation prejudicially affected the scope of the summary judgment record. "The standard of review for excluding expert testimony is abuse of discretion." *In re Acceptance Ins. Cos. Sec. Litig.*, 423

-4-

F.3d 899, 905 (8th Cir. 2005). "A district court abuses its discretion 'when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when the court, in weighing all proper factors, commits a clear error of judgment.'" *Shipp v. Murphy*, 9 F.4th 694, 700–01 (8th Cir. 2021) (quoting *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 393 (8th Cir. 2016)).

"Under [*Daubert*], district courts must act as gatekeepers to 'insure that proffered expert testimony is both relevant and reliable.'" *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003) (first citing *Daubert v. Merrell Pharms., Inc.*, 509 U.S. 579 (1993); then quoting *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997)). "Trial courts are given broad discretion in fulfilling this gatekeeping role . . . ." *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).

The Scobees designated Hildebrand as an expert regarding USAA's claim handling and its inconsistency with insurance industry standards of care. USAA moved the district court to preclude Hildebrand from testifying that USAA's handling of the Scobees' demand violated the KUCSPA; that USAA's conduct was "unreasonable," "unfair," "deceptive," or "reckless"; and that USAA should have tendered its policy limits based upon Kentucky's comparative fault regime. R. Doc. 149, at 1. USAA argued that these opinions would not assist a jury and constituted legal opinions. Further, USAA argued that some of Hildebrand's opinions misconstrued Kentucky law.

The district court granted USAA's motion in part. It held that Hildebrand's testimony regarding insurance industry claim handling standards and his opinions as to whether USAA's performance complied with those standards would be admissible. The district court also held that Hildebrand's testimony regarding the factual basis for those opinions is admissible.

The district court, however, did limit Hildebrand's testimony regarding what it considered the ultimate issues in the case. It concluded that Hildebrand could not

opine on the ultimate issue of whether USAA's performance violated the KUCSPA; could not conclude that an action was violative or inconsistent with the KUCSPA; could not offer opinions that USAA's claim handling was in bad faith or that it acted in a way that was unreasonable, unfair, deceptive, or reckless; and could not offer his conclusion that USAA acted "with no reasonable basis" or "with reckless disregard." The district court concluded that these opinions all went to the ultimate issues in the case or stated elements of a KUCSPA claim.

Finally, the district court concluded that Hildebrand could not offer his testimony regarding Kentucky's pure comparative fault regime because it was based upon an erroneous legal interpretation. The district court concluded that to maintain a KUCSPA bad faith claim, the Scobees would need to do more than create an issue concerning whether Mr. Norris was, to some degree, at fault. Instead, the district court explained, an insurer's KUCSPA obligations are triggered only when its insured "substantially" contributed to the accident.

The district court did not abuse its discretion when it limited Hildebrand's testimony. While an expert's "testimony is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact," "[a] trial court may, however, exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be." *Williams v. Wal-Mart Stores, Inc.*, 922 F.2d 1357, 1360 (8th Cir. 1990). As the district court explained, this includes legal conclusions such as whether USAA violated the KUCSPA. *See Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (holding that the district court abused its discretion by allowing testimony that "was not a fact-based opinion, but a statement of legal conclusion"). There is a difference between an expert's opinions regarding "industry practice or standards," which the district court properly deemed admissible, and his opinion on whether a statute has been contravened. *See S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003).

Similarly, the district court did not abuse its discretion when it excluded Hildebrand's testimony that USAA acted in a way that was "unreasonable," "unfair," "deceptive," or "reckless." "[C]ourts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 725 (8th Cir. 2015) (quoting *Robertson v. Norton Co.*, 148 F.3d 905, 908 (8th Cir. 1998)). Armed with Hildebrand's non-excluded testimony and the remaining submissible evidence, a jury could capably decide whether USAA acted unreasonably, unfairly, deceptively, or recklessly.

The district court also did not err when it excluded Hildebrand's opinions regarding Kentucky's pure comparative fault regime. Hildebrand opines in his preliminary expert report, without citation to any legal authority, that "[t]he application of pure comparative fault would make liability reasonably clear triggering USAA's bad faith failure to effectuate a prompt, fair and equitable settlement which forced the Scobee's [sic] to institute litigation." R. Doc. 149-2, at 19. Further, in his deposition, Hildebrand testified:

> [T]he fact that there are at least some claim personnel at USAA who attributed the majority of the fault to Mr. Norris at whatever point in time, it's clear that they should have made an offer to settle the case consistent with the liability. And that would also tie into the fact that it was reckless for them not to consider pure comparative fault when looking at the percentages of liability as between the two operators.

R. Doc. 156-9, at 23–24, 89:18–90:5. Hildebrand based his comments on an undated document in the claim file attributing 30% liability to Mr. Scobee. He asserted that USAA was obligated under Kentucky law to promptly offer the Scobees a settlement since that would mean its insured, Mr. Norris, was 70% at fault. Not only does the document not expressly attribute any percentage of liability to USAA, but Hildebrand's contention also is based upon his erroneous interpretation of Kentucky law. An insurer's duty under KUCSPA is triggered only after its liability is clear or "beyond dispute." *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 588 (Ky.

2021). "[T]he 'tall burden' of bringing a third-party bad-faith claim . . . 'requires a claimant to demonstrate it was unreasonable for the insurer to argue the insured's conduct was not a substantial factor in causing the accident.'" *Id.* (quoting *Messer v. Universal Underwriters Ins. Co.*, 578 S.W.3d 578, 588 (Ky. Ct. App. 2019)). USAA was not obligated to offer a settlement until after the jury verdict in the Underlying Litigation.

Lastly, the district court properly held that Hildebrand's testimony regarding the standards of claim handling in the insurance industry and his opinions as to whether USAA's performance complied with those standards were admissible. "Industry-wide practices are relevant to the question of whether an insurer acts within acceptable boundaries based on information it has received in a given case." *Cedar Hill Hardware & Constr. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 344 (8th Cir. 2009).

The Scobees' contention that the district court erred by failing to consider the admissible portions of Hildebrand's testimony is unsupported in the record. In fact, the district court expressly considered the non-excluded portions of Hildebrand's testimony. *See* R. Doc. 172, at 22 ("Likewise, Mr. Hildebrand's testimony, as limited by this Court, does not prove USAA's liability under the KUCSPA based upon these purported deficiencies.").

Thus, we affirm the district court's limitation of Hildebrand's testimony.

B. *Summary Judgment*

The district court granted summary judgment for USAA on the Scobees' KUCSPA claim. It concluded that the record lacked evidence that USAA engaged in the statutorily required "outrageous" conduct. On appeal, the Scobees argue that the record establishes that USAA acted outrageously when it denied payment of their

claim without a reasonable basis, failed to conduct a more thorough investigation, and concealed information from them. We disagree.[6]

"We review the district court's grant of summary judgment de novo." *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 543 (8th Cir. 2018). We will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If there is a genuine dispute, we view the disputed facts in the light most favorable to the nonmovant. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "We may affirm summary judgment for any reason supported by the record." *Gareis v. 3M Co.*, 9 F.4th 812, 818 (8th Cir. 2021).

"The [KUCSPA] prohibits unfair claims settlement practices to protect the public from unfair trade practices and fraud." *Belt v. Cincinnati Ins. Co.*, 664 S.W.3d 524, 531 (Ky. 2022). The statute lists specific acts that it deems unfair settlement practices. Ky. Rev. Stat. § 304.12-230. For example, the act deems it an unfair settlement practice to:

> (1) Misrepresent[] pertinent facts or insurance policy provisions relating to coverages at issue;
>
> .    .    .
>
> (3) Fail[] to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

---

[6]The district court applied Kentucky law. USAA, however, argues as an alternative ground for affirmance that the district court should have applied Missouri law. We need not consider USAA's choice-of-law argument because, as discussed below, USAA is entitled to summary judgment under Kentucky law.

(4) Refus[e] to pay claims without conducting a reasonable investigation based upon all available information;

.    .    .

(6) Not attempt[] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

.    .    .

(14) Fail[] to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement . . . .

*Id.*

In *Wittmer v. Jones*, the Supreme Court of Kentucky clarified that to prevail on a KUCSPA claim for bad faith, in addition to noncompliance with one of the unfair practices listed in the statute ("technical violations"), a plaintiff must show that:

(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

864 S.W.2d 885, 890 (Ky. 1993) (quoting *Fed. Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 847 (Ky. 1986) (Leibson, J., dissenting)); *see also Belt*, 664 S.W.3d at 531 ("Although the KUCSPA provides a list of improper practices, the offenses listed are merely 'technical violations.' Such 'technical violations' are contractual claims that cannot form the basis of a private cause of action for tortious misconduct rising to the level of bad faith."). "Because [a plaintiff] bears the burden of establishing all three elements, to defeat summary judgment she must offer proof for all three." *Hollaway v. Direct Gen. Ins. Co. of Miss.*, 497 S.W.3d 733, 738 (Ky.

-10-

2016). "The failure to show any of these elements eliminates the bad-faith claim as a matter of law." *Mosley*, 626 S.W.3d at 584. Ultimately, to maintain a KUCSPA claim, a plaintiff must "prove that an insurer's actions during resolution of the claim were outrageous, or because of the defendant's reckless indifference to the rights of others." *Hollaway*, 497 S.W.3d at 739; *see also Wittmer*, 864 S.W.2d at 890 ("Before the cause of action exists in the first place, there must be evidence sufficient to warrant punitive damages . . . .").

Here, even assuming the Scobees can establish technical violations of the KUCSPA, the district court did not err when it granted USAA's motion for summary judgment. A rational factfinder could not find that the Scobees satisfied the *Wittmer* elements or that USAA acted outrageously or in bad faith.

On September 18, 2015, prior to the Underlying Litigation, the Scobees made a time-limited demand for $5.25 million or the policy limit. On October 6, 2015, USAA responded that, based on its investigation, it did believe its insured, Mr. Norris, was negligent. In its response, USAA also requested that the Scobees provide any proof of Mr. Norris's liability as well as their theory of negligence. The Scobees never responded with the requested information. Instead, they brought the Underlying Litigation action against the Norrises on December 18, 2015.

The Scobees' proof does not permit a rational factfinder to find that, prior to the Underlying Litigation, USAA was "obligated to pay the claim under the terms of the policy," as the first *Wittmer* element requires. 864 S.W.2d at 890. The undated document in the Scobees' claim file assigning 30% liability to Mr. Scobee did not obligate USAA to pay the Scobees' claim under the terms of its policy. The document did not put Mr. Norris's liability beyond dispute and cannot establish that it was unreasonable for USAA to argue that Mr. Norris's conduct was not a substantial factor in causing the accident. *See Messer*, 598 S.W.3d at 588. Moreover, as the Supreme Court of Kentucky explained in *Hollaway*, even if "the insurer initially appeared to take responsibility for the accident, and attributed fault to its insured . . . impressions may change as investigations proceed." 497 S.W.3d at 738

-11-

(finding that liability was not "beyond dispute" despite the insurer's early investigatory notes attributing some fault to its insured). Thus, the Scobees inability to establish the first *Wittmer* element prevents it showing that USAA violated the KUCSPA.

Nor was liability beyond dispute during the Underlying Litigation, before the jury verdict. The purpose of the Underlying Litigation was to determine whether Mr. Norris was liable for Mr. Scobee's injuries. Until the jury returned its verdict for the Scobees, liability was debatable. *See Mosley*, 626 S.W.3d at 587 (concluding that liability "was debatable" and not beyond dispute when issues in the underlying action had yet to be resolved by the jury). Thus, the Scobees cannot establish that USAA violated the KUCSPA during the Underlying Litigation, before the jury verdict.

The Scobees argue that USAA should not be permitted to contend that liability was disputed after failing to conduct a reasonable investigation. To conclude otherwise, they argue, "would allow insurers to sit idly by, not lift a finger, say liability is disputed, and thereby forever escape any and all bad faith liability." Appellant's Br. 52. However, the Scobees have not established that USAA failed to conduct a reasonable investigation. USAA spoke with Mr. Norris; reviewed police reports; obtained information from Mr. Scobee's insurer, American Family Insurance Company; enlisted a third-party, Crawford & Company, to investigate the scene of the accident; and responded to the Scobees' demand letter by requesting more information. "[USAA] did not fail to investigate, communicate, or negotiate settlement with [the Scobees], it just did not do so in the ways that [the Scobees] would have liked." *Belt*, 664 S.W.3d at 537.[7]

---

[7]Furthermore, the Scobees' allegations regarding Mr. Norris's drug use did not place liability beyond dispute. Again, USAA conducted a sufficiently thorough investigation and concluded that he was not liable. The Scobees cannot meet their burden of establishing that USAA was obligated to pay the claim by attempting to cast doubt on one part of its investigation. Especially when other parts of the

Liability became "beyond dispute" after the jury returned its verdict in the Underlying Litigation. At that point, Mr. Norris became liable for Mr. Scobee's injuries, and USAA, as Mr. Norris's insurer, became obligated to pay the claim under the terms of the policy. Thus, the first *Wittmer* element was satisfied following the jury verdict. Undisputed underlying liability by its insured, however, does not, alone, suffice to show that USAA acted outrageously or in bad faith. A KUCSPA claim requires proof of the insurer's improper conduct.

The Scobees contend that, following the jury's verdict, USAA acted outrageously and in bad faith when it failed to pay them the $100,000 policy limit. However, two months after the verdict, USAA attempted to pay the Scobees the policy limit in full satisfaction of the judgment in the Underlying Litigation. The Scobees never responded to direct USAA where to send the payment nor did the Scobees reject USAA's condition that the payment be in full satisfaction of the verdict. The record reflects no correspondence between the parties following USAA's offer. A rational factfinder could not conclude that USAA acted outrageously or in bad faith when it offered to pay the Scobees $100,000—the full amount owed—and received no response.

USAA eventually paid the policy limit plus interest into the Eastern District of Missouri's court registry pursuant to an order in the declaratory judgment action. The Scobees contend that USAA's delay in tendering this payment—almost five years after the jury verdict—constitutes bad faith under Kentucky law. We disagree.

"[M]ere delay in settlement does not rise to bad-faith conduct." *Mosley*, 626 S.W.3d at 588–89. "So a plaintiff must provide 'proof or evidence supporting a reasonable inference that the purpose of the delay was to extort a more favorable settlement or to deceive the insured [or claimant] with respect to the applicable

---

investigation, including the responding officer's police report, do not indicate that Mr. Norris appeared impaired after the accident. *See* R. Doc. 80-3.

coverage.'" *Belt*, 664 S.W.3d at 536 (alteration in original) (quoting *Motorist Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452–53 (Ky. 1997)).

Here, the Scobees provided no evidence of improper motive in USAA's delays. USAA contacted the Scobees regarding this payment two months after the jury verdict, but the Scobees did not respond. Accordingly, USAA initiated a declaratory judgment action to determine its obligations under Mr. Norris's policy. When the district court in that action issued an order stating that USAA could issue its payment to the court registry, it did so promptly.

Thus, the district court did not err when it found no evidence of bad faith by USAA. Accordingly, we affirm its grant of summary judgment for USAA.

## C. *USAA's Expert Witness*

Lastly, the Scobees argue that if we reverse the district court's decision granting summary judgment for USAA, we should also reverse its decision denying the Scobees' motion to exclude the testimony of USAA's expert, Woolums, as moot. For the reasons discussed above, the district court appropriately granted summary judgment for USAA, and, thus, appropriately denied the Scobees' motion regarding USAA's expert as moot.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

SHEPHERD, Circuit Judge, dissenting in part.

I agree with the majority that given the contested nature of the facts surrounding the accident, liability did not become "beyond dispute" until after the jury verdict in the Underlying Litigation in 2019. However, I believe there are genuine disputes of material fact as to whether USAA acted in bad faith by delaying its payment of the $100,000 policy limit until 2024, nearly five years after the jury rendered its $7 million verdict. Because USAA never appealed the jury verdict on

-14-

the merits or claimed that it owed less than the policy amount, it was undisputed since as early as 2019 that USAA owed the Scobees at least $100,000. Yet USAA did not pay this amount until 2024, deferring this payment as it pursued another lengthy lawsuit in federal district court. Because a reasonable juror could find that this conduct constitutes bad faith, I respectfully dissent from Part II.B of the Court's opinion.

The majority points out that USAA offered to pay the Scobees the policy limit two months after the jury verdict was rendered. But this offer to pay was facially unreasonable because it was conditioned on a *full satisfaction of the judgment*. Given that the Scobees had just won a $7 million verdict at trial, and given that the trial court had already denied the motion to reduce the judgment to the policy limit, the Scobees had no incentive whatsoever to accept USAA's offer. A reasonable juror could certainly find it "outrageous" for an insurance company to require that a plaintiff relinquish a $7 million judgment in order to receive a $100,000 policy payment, when the plaintiff is already owed the $100,000 policy payment anyway. By deeming this conduct good faith as a matter of law, however, the Court's opinion permits insurance companies to add unjustified conditions to their policy obligations instead of paying what they owe when they owe it.

The majority also says that a "mere delay in settlement" is not bad-faith conduct. But what USAA delayed here was not a settlement, but the payment of an undisputed portion of a final judgment—these are not the same thing. It is more demonstrative of bad faith to delay paying out a judgment, when liability has already been proven in a court of law, than to delay settling, when liability has not been established. Cf. Mosley v. Arch Specialty Ins. Co., 626 S.W.3d 579, 587-88 (Ky. 2021) (agreeing that an insurer "would not be legally obligated to pay [] *until a jury ultimately determined liability*" and that "[w]hen liability is clear or 'beyond dispute,' a claim must be paid" (emphasis added) (citation omitted)); Wittmer v. Jones, 864 S.W.2d 885, 892 (Ky. 1993) (noting that an insurer's "legal responsibility . . . to pay[]" is triggered "upon proof of loss"). In any case, even for a settlement, a reasonable juror could find that a delay of nearly five years is more

-15-

than "mere delay." See Phelps v. State Farm Mut. Auto. Ins. Co., 736 F.3d 697, 705-06 (6th Cir. 2012) (finding that a delay of nearly three years could "constitute more than 'mere delay' and instead may serve as evidence of bad faith").

It is understandable that USAA wanted to defend itself from paying the entire judgment. But USAA has not explained why it could not have first tendered or deposited the $100,000 policy limit—which was indisputably owed to the Scobees since the 2019 judgment—and then defended itself against paying the rest of the judgment if necessary. Because USAA's delay in paying the Scobees and its conditioning of its payment on the full satisfaction of the judgment raises a genuine dispute as to whether it acted in bad faith, I would reverse the district court's grant of summary judgment. Thus, I respectfully dissent.

_____